Lawrence R. Ream, WSBA #18159
Richard G. Birinyi, WSBA #9212
Bullivant Houser Bailey PC
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930
Facsimile:    (206) 386-5130

Attorneys for Debtor

Hon. Philip H. Brandt<br>
Chapter: 11<br>
Location: Seattle

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| In re:<br><br>ONENAME CORPORATION,<br><br>          Debtor. | No.: 03-22581<br><br>PLAN OF REORGANIZATION |

OneName Corporation, as debtor and debtor-in possession, proposes this Plan of Reorganization pursuant to § 1121 (a) of the United States Bankruptcy Code.

### ARTICLE I  -  DEFINITIONS AND INTERPRETATION

**1.**    The following boldface terms, when capitalized, shall have the meanings specified below, and such meanings shall be equally applicable to the singular and plural forms of such terms.  Any term used in this Plan that is not defined herein, but is defined in the United States Bankruptcy Code or the Federal Rules of Bankruptcy Procedures, shall have the meaning ascribed to that term in the Code or the Bankruptcy Rules.

**1.1    Administrative Expense Claim** means a Claim or portion of a Claim allowed under Code § 503(b) and entitled to priority under Code § 507(a)(1).  This shall include any

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

cure costs under Assumed Contracts and Leases as determined by this Court pursuant to the procedures approved by this Court to fix such cure costs.

**1.2** **Allowable § 506(b) Amounts** means all fees, costs, expenses, interest and other charges due or coming due in respect of a Secured Claim to the extent allowable under Code § 506(b).

**1.3** **Allowed,** when used with respect to any Claim or Interest, means the Claim or Interest or applicable portion thereof that has been allowed pursuant to Code § 502, and, if the Claim or Interest was objected to, means that a Final Order has been entered allowing the Claim or Interest pursuant to Code §502. Unless otherwise specified, the term Allowed does not include (i) interest on the amount of such Claim accruing from and after the Petition Date, (ii) fees and costs incurred from and after the Petition Date, (iii) punitive or exemplary damages or (iv) any fine, penalty or forfeiture.

**1.4** **Assumed Contracts and Leases** means those executory contracts and unexpired leases designated by the Debtor from time to time as ones to be assumed on or before the Effective Date, subject to any additions or deletions to such list by the Debtor prior to the Effective Date or as otherwise provided in Article 9 of this Plan.

**1.5** **Ballot** means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims and Impaired Interests.

**1.6** **Ballot Date** means the date which the Court sets for submission of Ballots on this Plan.

**1.7** **Bankruptcy Rules** mean the Federal Rules of Bankruptcy Procedure, as amended and promulgated under § 2075 of Title 28 of the United States Code and local rules of the Court.

**1.8** **Case** mean the above-captioned bankruptcy case.

**1.9** **Causes of Action** means any and all causes of action of the Debtor, whether arising under the Code or other state, federal or common law, including, without limitation,

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

actions under Article V of the Code, but, for the avoidance of doubt, shall not include any causes of action against other parties to the extent released under prior orders in the Case or pursuant to Paragraph 7.15 of this Plan or the Confirmation Order.

**1.10** **Claim** means, as against the Debtor, (i) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.11** **Class** means a category or group of holders of Claims or Interests as designated in Article 3 of this Plan pursuant to Code § 1122(a)(1).

**1.12** **Closing** means the closing of the Convertible Financing contemplated hereby and in the Term Sheet.

**1.13** **Closing Date** means the date on which the Closing occurs.

**1.14** **Code** or **Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101 et. sec.

**1.15** **Committee** means the Official Unsecured Creditors' Committee appointed by the Office of the United States Trustee for the Western District of Washington.

**1.16** **Committee-Related Parties** shall have the meaning set forth in Paragraph 7.15 of this Plan.

**1.17** **Company-Related Parties** shall have the meaning set forth in Paragraph 7.15 of this Plan.

**1.18** **Confirmation** means the entry of the Confirmation Order by the Court pursuant to Code § 1129.

**1.19** **Confirmation Date** means the date that the Court enters the Confirmation Order.

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone: (206) 292-8930

**1.20     Confirmation Hearing** means the hearing to consider confirmation of this Plan.

**1.21     Confirmation Hearing Date** means the date on which the Court holds the Confirmation Hearing.

**1.22     Confirmation Order** means the order of the Court confirming this Plan.

**1.23     Contested Claim** means a Claim against or Interest in the Debtor, as the case may be, to which an objection has been filed by a party in interest and which objection has not been resolved as of a Final Order, or otherwise.

**1.24     Contested Claim Reserve** means the reserve maintained for the benefit of holders of Contested Claims in the aggregate asserted amount of Contested Claims to allow sufficient funds for a Pro Rata distribution if ultimately Allowed, unless the Court determines a lesser amount is appropriate after notice to holders of affected Contested Claims and a hearing.

**1.25     Convertible Financing** means the convertible financing pursuant to Article VIII of the Plan.

**1.26     Convertible Financing A-Note** means a note issued to a particular holder pursuant to the Convertible Financing having a conversion rate of one share of New Preferred Stock for each $.81 of the liability on the note. (Substantially in the form attached as Exhibit C hereto.)

**1.27     Convertible Financing B-Note** means a note issued to a particular holder pursuant to the Convertible Financing having a conversion rate of one share of New Preferred Stock for each $4.05 of the liability on the note.  (Substantially in the form attached as Exhibit D hereto.)

**1.28     Convertible Financing Closing** means the final closing of the Convertible Financing which will take place as soon as practicable following the Subscription Expiration Date.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**1.29    Convertible Financing Offering** means the offering to participate in the Convertible Financing to Creditors and Interestholders, as more fully described in Article 8 of this Plan.

**1.30    Court** means the United States Bankruptcy Court for the Western District of Washington, or such other court of competent jurisdiction exercising jurisdiction over all or part of the Case.

**1.31    Creditor** means the holder of a Claim (other than as holder of an Administrative Expense Claim).

**1.32    Debtor** means the debtor in this Case as a debtor and debtor-in-possession.

**1.33    DIP Financing Facility** means the debtor-in-possession financing facility provided to the Debtor by the Postpetition Lenders, or any successor financing facility.

**1.34    DIP Financing Order** means that certain Final Order Authorizing Post-Petition Borrowing After Final Hearing as entered by the Court on November 10, 2003 approving the DIP Financing Facility and any amendments or extensions thereof.

**1.35    DIP Lenders**:  (see definition of Post-Petition Lenders)

**1.36    Disallowed,** when used with respect to a Claim, means that the Claim or applicable portion thereof has been determined by a Final Order to be invalid.

**1.37    Disbursing Agent** means any agent the Debtor elects to employ to make distributions to one or more Classes of Claims under this Plan.

**1.38    Disclosure Statement** means the disclosure statement filed under Code § 1125 in support of this Plan.

**1.39    Effective Date** means the later of (i) the Closing Date or (ii) the eleventh day after the Confirmation Date, calculated in accordance with Bankruptcy Rule 9006, unless the Confirmation has been stayed, in which event it is the first day after such stay is no longer in effect, or such later date as the Debtor shall elect in writing.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**1.40** **Employee Stock Notes** means the pre-petition notes executed by the Debtor's employees to purchase stock in the Debtor.

**1.41** **Exchange Note Holders** means the individual lenders who provided the Debtor with prepetition exchange debt financing.

**1.42** **Final Order** means an order or judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which order or judgment the time to appeal, petition for certiorari, or seek reargument, review or rehearing has expired and as to which no appeal, petition for certiorari or motion for reargument, review or rehearing was timely filed or, if timely filed, the order or judgment has been affirmed by the highest court to which the order or judgment was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or petition for certiorari or to seek further reargument or rehearing has expired.

**1.43** **Impaired** means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Code § 1124.

**1.44** **Interest** means an equity interest in the Debtor.

**1.45** **Interestholder** means the holder of an Interest.

**1.46** **Lien** means a charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.47** **Management and Employee Incentive Plan** means the Reorganized Debtor's Management and Employee Incentive Plan adopted as of the Effective Date by the Reorganized Debtor pursuant to ¶ 7.16 of the Plan.

**1.48** **New Common Stock** means the newly-issued shares of common stock of Reorganized Debtor.

**1.49** **New Preferred Stock** means the newly authorized and to be issued shares of preferred stock of Reorganized Debtor having the rights and preferences set forth in the Term Sheet.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**1.50    Option Rights** means the right to purchase shares of stock in the Debtor, whether denominated as common options, common warrants, E preferred warrants, or any other right.

**1.51    Patent Litigation** means certain litigation the Debtor intends to commence to enforce various of its patents.

**1.52    Petition Date** means September 30, 2003.

**1.53    Plan** means this Plan of Reorganization, as the same may be amended from time to time pursuant to the Plan's terms, the Code or the Bankruptcy Rules and, as applicable, exhibits and schedules referenced therein, whether on file with this document or filed prior to the Confirmation Hearing Date.

**1.54    Plan Supplement** means one or more supplements to the Plan containing documents contemplated to implement the Plan.

**1.55    Postpetition Lenders** means the individual lenders who provided the Debtor with the DIP Financing approved by the Bankruptcy Court, together with any successors and assigns.  (Also referred to as the DIP Lenders).

**1.56    Prepetition Secured Note Holders** means the individual lenders who provided the Debtor with prepetition secured debt financing.

**1.57    Professionals** means any Court-approved professional Person employed by the applicable entity in this Case at any time before Confirmation.

**1.58    Pro Rata** means the proportion that the amount of an Allowed Claim or Allowed Interest in a particular Class or Subclass bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class or Subclass (including any Contested Claim Reserve).

**1.59    Reorganized Debtor** means the Debtor as reorganized pursuant to this Plan.

**1.60    Restated By-Laws** has the meaning set forth in Paragraph 7.12.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA  98101-1618
Telephone:     (206) 292-8930

**1.61** **Restated Articles of Incorporation** has the meaning set forth in Paragraph 7.12.

**1.62** **Secured Claim** means a secured Claim within the meaning of Code § 506.

**1.63** **Secured Exchange Notes** means the exchange notes which became secured by reason of a Prepetition Secured Note Holder's participation in the secured debt financing.

**1.64** **Subclass** means a subclass of any Class as designated in Article 3 of the Plan.

**1.65** **Subscription** means a subscription to participate in the Convertible Financing pursuant to the Convertible Financing Offering.

**1.66** **Subscription Commitment Agreement** means the binding commitment to be executed by Creditors or Interestholders pursuant to which such Creditors or Interestholders commit to provide funds in exchange for the issuance of a Convertible Financing A-Note pursuant to the Convertible Financing Offering, which commitment agreement shall be in substantially the same form as the one to be contained in the Plan Supplement.

**1.67** **Subscription Expiration Date** means the date 30 days after the Confirmation Date.

**1.68** **Tax Code** means the Internal Revenue Code of 1986, as amended.

**1.69** **Term Sheet** means that term sheet for the company's secured convertible debt offering dated September 3, 2003 and any subsequent amendment thereto. A copy of the Term Sheet is attached hereto as Exhibit B.

**1.70** **Unimpaired** means, when used with reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of § 1124 of the Code.

**1.71** **Unsecured Claim** means a Claim other than a Secured Claim, an Administrative Expense Claim or a Priority Tax Claim.

**1.72** **Interpretation.** Any term not defined herein has the meaning ascribed to it in the Code or the Bankruptcy Rules. The exhibits attached to this Plan are incorporated into and are part of this Plan as if fully set forth in this Plan. The headings in this Plan are for

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

convenience of reference only and shall not limit or otherwise affect the provisions hereof. The words "including" and "include" and other words of similar import shall be deemed to be followed by the phrase "without limitation".

### ARTICLE II - PROVISIONS FOR THE ALLOWANCE AND PAYMENT OF UNCLASSIFIED CLAIMS, ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**2.** Unclassified Claims, Administrative Claims and Priority Tax Claims are not classified under the Plan and shall be treated as follows:

**2.1 Section 507(a)(1) Claims.** Administrative Claims are not classified and shall be treated as follows:

**2.1.1 Administrative Expense Claims.** Each holder of an Allowed Administrative Expense Claim (including the DIP Financing Facility and cure costs on Assumed Contracts and Leases) shall be paid in respect of such Claim in Cash, in full, on the Effective Date, or, if such Claim has not been Allowed on or before the Effective Date, promptly after the allowance of the Claim by a Final Order or as otherwise due by agreement of the parties; provided, however, that such Claim may be satisfied on such other terms as may be agreed by the holder of such Claim and the Debtor. Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid in accordance with the agreed terms between the parties. On the Effective Date, all of the obligations of the Debtor to the Postpetition Lenders under or in respect of the DIP Financing Facility and the DIP Financing Order shall be assumed in accordance with the terms of the fully and finally approved term sheet governing the DIP Financing Facility.

**2.1.2 Bar Date for Requests For Payment of an Administrative Expense.** All requests for payment of an Administrative Expense Claim not covered by previous bar dates, except for Professionals' requests for compensation and post-

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

petition extensions of trade credit for goods or services and quarterly U.S. Trustee fees, shall be filed with the Court no later than thirty (30) days after the Effective Date or be forever barred.  Within five (5) days after the Effective Date, Debtor shall serve notice of such Administrative Expense bar date on all known parties asserting Administrative Expense Claims except for Professionals.  A bar date for Professionals' requests for compensation shall be set in the Confirmation Order.

       **2.1.3   Deadline for Objections.**  All objections to allowance of Administrative Expense Claims must be filed by any parties in interest within thirty (30) days after the Administrative Expense Claim bar date.  If no objection to the applicable Administrative Expense Claim is filed on or before that date, such Administrative Expense Claim shall be deemed Allowed as of that date.

       **2.1.4   U.S. Trustee Fees.**  Quarterly fees owed to the Office of the U.S. Trustee shall be paid when due in accordance with applicable law and the Debtor shall continue to file reports to show the calculation of such fee for its estate until the case is closed under Code § 350.

   **2.2**      **Section 507(a)(8) Claims.**  Priority Tax Claims are not classified and are treated as follows:

       **2.2.1   Priority Tax Claims.**  Any holder of an Allowed Priority Tax Claim shall receive at the Debtor's option (i) the amount of the Allowed Priority Tax Claim in one Cash payment on or immediately after the Effective Date or (ii) the amount of the Allowed Priority Tax Claim, with interest, in equal annual Cash payments on each anniversary of the Effective Date, until the last anniversary of the Effective Date that precedes the sixth anniversary date of the date of assessment of the Allowed Priority Tax Claim.  The first payment shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order.  Such claim shall bear simple interest

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:   (206) 292-8930

at the rate of 5.5% per annum..  The claim may be pre-paid in whole or in part at any time before then in Cash at the sole option of Reorganized Debtor.  A Priority Tax Claim that is a Contested Claim shall not receive any distribution on the Effective Date or thereafter unless and until such Claim becomes an Allowed Priority Tax Claim.  Allowed Secured Claims for taxes will be satisfied first as non-classified Priority Tax Claims to the extent they qualify as Priority Tax Claims, but shall retain any collateral for such Claim until the Priority Tax Claim is paid in full.  To the extent that some or all of an Allowed Secured Claim for taxes does not qualify as a Priority Tax Claim, but is a valid Allowed Secured Claim, it will be classified in Subclass 2e-n.

## ARTICLE III  -  CLASSIFICATION OF CLAIMS AND INTERESTS

**3.**      All Claims against the Debtor and all Interests in the Debtor, as defined in §§ 101(5), (16) and (17) of the Bankruptcy Code, are classified as set forth herein.  Except as provided in ¶ 3.2.5 below, a claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class or is Unclassified to the extent it qualifies within the definition of such different Class or as Unclassified.

**3.1**      **Class 1 – Allowed Prepetition Priority Debt**.  Class 1 consists of all Allowed Claims against the Debtor entitled to priority pursuant to §§ 507(a)(3) through (5) of the Bankruptcy Code.

**3.2**      **Class 2 – Allowed Secured Claims.**  Class 2 consists of Allowed Secured Claims against the Debtor.  There are 5 Subclasses of Class 2 Claims.  A list of the creditors in each Subclass is attached as Exhibit IV to the Disclosure Statement.

**3.2.1   Subclass 2a**:  The senior Allowed Secured Claim of Perkins Coie.

**3.2.2   Subclass 2b**:  The second tier Allowed Secured Claim of the Prepetition Secured Note Holders.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**3.2.3   Subclass 2c**:  The third tier Allowed Secured Claim of Perkins Coie and the holders of Secured Exchange Notes.

**3.2.4   Subclass 2d**:  The fourth tier Allowed Secured Claim of the Prepetition Secured Note Holders.

**3.2.5   Subclass 2e**:  The Allowed Secured Claim of any other creditor holding a claim secured by assets of the estate, each of which are separately classified in their own distinct sub-classes Class 2e-1 through 2e-n.  To the extent that a Secured Tax Claim is also a Priority Tax Claim, such Claim shall be paid as Priority Tax Claims but the holder of such claim shall retain its lien on collateral in its existing priority until paid in full.  To the extent a Secured Tax Claim is not a Priority Tax Claim, it shall be paid in the manner set forth in ¶ 5.2.5 below.

**3.3**     **Class 3 - Allowed General Unsecured Claims.**  Class 3 consists of Allowed Unsecured Claims against the Debtor, however arising, not entitled to priority and not otherwise included in any other Class hereof, including, without limitation, claims based upon the rejection of executory contracts or unexpired leases.

**3.4**     **Class 4 -  Allowed Interests.**  All Allowed Interests in the Debtor.  There are seven Subclasses of Class 4 Interests.

**3.4.1   Subclass 4a.**  All Allowed Interests in the Debtor held by the holders of the Debtor's Class A Preferred Stock.

**3.4.2   Subclass 4b.**  All Allowed Interests in the Debtor held by the holders of the Debtor's Class B Preferred Stock.

**3.4.3   Subclass 4c.**  All Allowed Interests in the Debtor held by the holders of the Debtor's Class C Preferred Stock.

**3.4.4   Subclass 4d.**  All Allowed Interests in the Debtor held by the holders of the Debtor's Class D Preferred Stock.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA  98101-1618
Telephone:    (206) 292-8930

**3.4.5   Subclass 4e.**  All Allowed Interests in the Debtor held by the holders of the Debtor's Class E Preferred Stock.

**3.4.6   Subclass 4f.**  All Allowed Interests in the Debtor held by the holders of the Debtor's Common Stock.

**3.4.7   Subclass 4g.**  All Allowed Interests in the Debtor held by the holders of Option Rights.

## ARTICLE IV  -  IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS

**4.      Impaired Classes of Claims and Interests.**  Classes 1, 2, 3, and 4 and applicable subclasses therein are Impaired under this Plan.

## ARTICLE V  -   PROVISIONS FOR TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.**      The treatment of all Allowed Claims and Allowed Interests are specified as follows:

**5.1     Priority Claims:**

**5.1.1   Class 1 Claims.**  Class 1 is Impaired.  Each holder of a Class 1 Allowed Claim shall be paid the entire amount of such holder's Allowed Claim by the Reorganized Debtor on the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such claim becomes a Final Order.  There shall be credited against any Class 1 Allowed Claim any Post Petition Date payments made to the holder of such Class 1 Allowed Claim.

**5.2     Secured Claims:** Class 2 Claims consist of all Allowed Secured Claims. Class 2 Claims are further divided into separate Subclasses 2a through 2e, the treatment of which is specified below.

**5.2.1   Subclass 2a.**  Subclass 2a is Impaired.  The Subclass 2a Allowed Secured Claim shall be paid and satisfied in the manner set forth in ¶ 5.2.1.1 below,

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA  98101-1618
Telephone:    (206) 292-8930

unless the holder of such claim elects to receive the treatment specified in ¶ 5.2.1.2 or 5.2.1.3 below.

5.2.1.1.    The holder of the Subclass 2a Allowed Secured Claim shall retain all its liens encumbering the property revested in the Reorganized Debtor and the Reorganized Debtor shall pay the holder of such Secured Claim an amount equal to (i) 36 monthly payments of interest only, then (ii) 36 monthly payments in the amount necessary to fully amortize the amount of such holder's Secured Claim over a period of time fifteen years from the date of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Subclass 2a Allowed Secured Claim.  The first payment shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order.  Such claim shall bear simple interest at the rate of 5.5% per annum.  As soon as practicable following the Effective Date, the Reorganized Debtor shall establish an interest reserve account as security for the payment of the interest payments to be made during the first three years. The interest payments required under this ¶ 5.2.1.1 shall be made from such account and the holder of the Subclass 2a claim shall have a security interest in such account.  Subject to the prepayment obligation contained in ¶ 7.3 below, the Subclass 2a Claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.  In the event the holder of any Convertible Financing A Note or Convertible Financing B-Note commences any action to execute collateral which is security for said Notes and security for Subclass 2a, then the entire amount of the Subclass 2a Secured Claim shall become immediately due and payable.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

5.2.1.2.    If the holder of the Subclass 2a Allowed Secured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to the Class 2a Allowed Secured Claim and be paid in accordance with the terms of such Convertible Financing B-Note.  The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan.  The provisions of this ¶ 5.2.1.2 shall be void and of no further force or effect with respect to the holder of the Class 2a Allowed Secured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

5.2.1.3.    In the event the holder of the Subclass 2a Allowed Secured Claim timely executes and returns a Subscription Commitment Agreement and such holder has timely elected to receive a Convertible Financing B-Note, then such holder shall receive a Convertible Financing A-Note in a face amount equal to One Hundred Percent (100%) of that portion of the Class 2a Allowed Secured Claim that equals the amount of the Subscription Commitment and shall receive a Convertible Financing B-Note for the balance, if any, of the Class 2a Allowed Secured Claim, and shall be paid in accordance with the terms of such notes.  The execution and return of the Subscription Commitment Agreement must be made on or before the Subscription Expiration Date.  The provisions of this ¶ 5.2.1.3 shall be void and of no further force or effect with respect to the holder of the Class 2a Allowed Secured Claim in the event such holder fails to timely execute and return a Subscription Commitment Agreement.

**5.2.2   Subclass 2b.**  Subclass 2b is Impaired.  The Subclass 2b Allowed Secured Claims shall be paid and satisfied in the manner set forth in ¶ 5.2.2.1 below,

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

unless the holder of a particular claim elects to receive the treatment specified in ¶ 5.2.2.2 or ¶ 5.2.2.3 below.

     5.2.2.1.    The holder of the Subclass 2b Allowed Secured Claim shall retain all its liens encumbering the property revested in the Reorganized Debtor and the Reorganized Debtor shall pay the holder of such Secured Claim an amount equal to (i) 36 monthly payments of interest only, then (ii) 36 monthly payments in the amount necessary to fully amortize the amount of such holder's Secured Claim over a period of time fifteen years from the date of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Subclass 2b Allowed Secured Claim. The first payment shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order. Such claim shall bear simple interest at the rate of 5.5% per annum. Subject to the prepayment obligation contained in ¶ 7.3 below, a Subclass 2b Claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

     5.2.2.2.    If a holder of a Subclass 2b Allowed Secured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to the Class 2b Allowed Secured Claim and be paid in accordance with the terms of such Convertible Financing B-Note. The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan. The provisions of this ¶ 5.2.2.2 shall be void and of no further force or effect with respect to the holder of the Class 2b Allowed Secured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:   (206) 292-8930

5.2.2.3.    In the event the holder of the Subclass 2b Allowed Secured Claim timely executes and returns a Subscription Commitment Agreement and such holder has timely elected to receive a Convertible Financing B-Note, then such holder shall receive a Convertible Financing A-Note in a face amount equal to One Hundred Percent (100%) of that portion of the Class 2b Allowed Secured Claim that equals the amount of the Subscription Commitment and shall receive a Convertible Financing B-Note for the balance, if any, of the Class 2b Allowed Secured Claim, and shall be paid in accordance with the terms of such notes.  The execution and return of the Subscription Commitment Agreement must be made on or before the Subscription Expiration Date.  The provisions of this ¶ 5.2.2.3 shall be void and of no further force or effect with respect to the holder of the Class 2b Allowed Secured Claim in the event such holder fails to timely execute and return a Subscription Commitment Agreement.

**5.2.3  Subclass 2c.**  Subclass 2c is Impaired.  The Subclass 2c Allowed Secured Claims shall be paid and satisfied in the manner set forth in ¶ 5.2.3.1 below, unless the holder of a particular claim elects to receive the treatment specified in ¶ 5.2.3.2  or ¶ 5.2.3.3 below.

5.2.3.1.    The holder of the Subclass 2c Allowed Secured Claim shall retain all its liens encumbering the property revested in the Reorganized Debtor and the Reorganized Debtor shall pay the holder of such Secured Claim an amount equal to (i) 36 monthly payments of interest only, then (ii) 36 monthly payments in the amount necessary to fully amortize the amount of such holder's Secured Claim over a period of time fifteen years from the date of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Subclass 2c Allowed Secured Claim.  The first

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

payment shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order. Such claim shall bear simple interest at the rate of 5.5% per annum. Subject to the prepayment obligation contained in ¶ 7.3 below, a Subclass 2c Claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

5.2.3.2. If a holder of a Subclass 2c Allowed Secured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to the Class 2c Allowed Secured Claim and be paid in accordance with the terms of such Convertible Financing B-Note. The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan. The provisions of this ¶ 5.2.3.2 shall be void and of no further force or effect with respect to the holder of the Class 2c Allowed Secured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

5.2.3.3. In the event the holder of the Subclass 2c Allowed Secured Claim timely executes and returns a Subscription Commitment Agreement and such holder has timely elected to receive a Convertible Financing B-Note, then such holder shall receive a Convertible Financing A-Note in a face amount equal to One Hundred Percent (100%) of that portion of the Class 2c Allowed Secured Claim that equals the amount of the Subscription Commitment and shall receive a Convertible Financing B-Note for the balance, if any of the Class 2c Allowed Secured Claim, and shall be paid in accordance with the terms of such notes. The execution and return of the Subscription Commitment Agreement must be made on or before the Subscription Expiration Date. The provisions of this ¶ 5.2.3.3 shall be void and of no

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone: (206) 292-8930

further force or effect with respect to the holder of the Class 2c Allowed Secured Claim in the event such holder fails to timely execute and return a Subscription Commitment Agreement.

**5.2.4   Subclass 2d.**  Subclass 2d is Impaired.  The Subclass 2d Allowed Secured Claims shall be paid and satisfied in the manner set forth in ¶ 5.2.4.1 below, unless the holder of a particular claim elects to receive the treatment specified in ¶ 5.2.4.2  or ¶ 5.2.4.3 below.

5.2.4.1.   The holder of the Subclass 2d Allowed Secured Claim shall retain all its liens encumbering the property revested in the Reorganized Debtor and the Reorganized Debtor shall pay the holder of such Secured Claim an amount equal to (i) 36 monthly payments of interest only, then (ii) 36 monthly payments in the amount necessary to fully amortize the amount of such holder's Secured Claim over a period of time fifteen years from the date of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Subclass 2d Allowed Secured Claim.  The first payment shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order.  Such claim shall bear simple interest at the rate of 5.5% per annum.  Subject to the prepayment obligation contained in ¶ 7.3 below, a Subclass 2d Claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

5.2.4.2.   If a holder of a Subclass 2d Allowed Secured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to the Class 2d Allowed Secured Claim and be paid in accordance with the terms of such Convertible Financing B-Note.  The election must be made on or before the date fixed by the Court for filing

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

objections to the confirmation of this Plan. The provisions of this ¶ 5.2.4.2 shall be void and of no further force or effect with respect to the holder of the Class 2d Allowed Secured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

5.2.4.3.    In the event the holder of the Subclass 2d Allowed Secured Claim timely executes and returns a Subscription Commitment Agreement and such holder has timely elected to receive a Convertible Financing B-Note, then such holder shall receive a Convertible Financing A-Note in a face amount equal to One Hundred Percent (100%) of that portion of the Class 2d Allowed Secured Claim that equals the amount of the Subscription Commitment and shall receive a Convertible Financing B-Note for the balance, if any of the Class 2d Allowed Secured Claim, and shall be paid in accordance with the terms of such notes. The execution and return of the Subscription Commitment Agreement must be made on or before the Subscription Expiration Date. The provisions of this ¶ 5.2.4.3 shall be void and of no further force or effect with respect to the holder of the Class 2d Allowed Secured Claim in the event such holder fails to timely execute and return a Subscription Commitment Agreement.

**5.2.5   Subclass 2e.** Subclass 2e is Impaired. The Class 2e Claims consist of all Allowed Secured Claims, if any, held by Persons other than holders of Allowed Secured Claims in Subclass 2a through 2d under this Plan. Subclass 2e Claims are further divided into separate classes 2e-1 through 2e-n. The holder of any claim in Subclass 2e shall receive the treatment specified in ¶ 5.2.5.1, unless the holder of a particular claim elects to receive the treatment specified in ¶ 5.2.5.2 below.

5.2.5.1.    Following the identification of the holder of any Subclass 2e Allowed Secured Claim, the Reorganized Debtor may (A) elect to retain the

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:   (206) 292-8930

collateral securing such claim and the holder of such 2e-n Allowed Secured Claim shall retain all its liens encumbering the property revested in the Reorganized Debtor and the Reorganized Debtor shall pay the holder of such Secured Claim an amount equal to (i) 36 monthly payments of interest only, then (ii) 36 monthly payments in the amount necessary to fully amortize the amount of such holder's Secured Claim over a period of time fifteen years from the date of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Subclass 2e-n Allowed Secured Claim, or (B) return the collateral to the holder of the Subclass 2e-n Allowed Secured Claim. In the event the Reorganized Debtor elects to retain the collateral, the first payment shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order. Such Claim shall bear simple interest at the rate of 5.5% per annum. Subject to the prepayment obligation contained in ¶ 7.3 below, a Subclass 2e-n Claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

5.2.5.2. If a holder of a Subclass 2e-n Allowed Secured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to the Class 2e-n Allowed Secured Claim and be paid in accordance with the terms of such Convertible Financing B-Note. The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan. The provisions of this ¶ 5.2.5.2 shall be void and of no further force or effect with respect to any holder of a Class 2e-n Allowed Secured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

**5.3     Unsecured Claims:**  Class 3 Claims consist of all Allowed Unsecured Claims.

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**5.3.1** Class 3 is Impaired. The holder of any Claim in Class 3 shall be paid and satisfied in the manner set forth in ¶ 5.3.1.1 below, unless the holder of a particular claim elects to receive the treatment specified in ¶ 5.3.1.2 below.

    5.3.1.1. The Reorganized Debtor shall pay the holder of any Class 3 Claim an amount equal to (i) 48 monthly payments of interest only, then (ii) 24 monthly payments in the amount necessary to fully amortize the amount of such holder's Allowed Unsecured Claim over a period of time fifteen years from the date of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Class 3 Allowed Unsecured Claim. The first payment shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Allowed Unsecured Claim becomes a Final Order. Such claim shall bear simple interest at the federal judgment rate on the Effective Date. Subject to the prepayment obligation contained in ¶ 7.3 below, any claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

    5.3.1.2. If a holder of a Class 3 Allowed Unsecured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to such holder's Class 3 Allowed Unsecured Claim and be paid in accordance with the terms of such Convertible Financing B-Note. The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan. The provisions of this ¶ 5.3.1.2 shall be void and of no further force or effect with respect to any holder of a Class 3 Allowed Unsecured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone: (206) 292-8930

**5.4     Interests.**  Class 4 Interests consists of all Allowed Interests in the Debtor. Class 4 Interests are further divided into separate Subclasses 4a through 4g, the treatment of which is specified below.

     **5.4.1     Subclass 4a.**  The holders of Subclass 4a Allowed Interests will receive 0.06273414 shares of New Common Stock for each share of Class A Preferred Stock held by the holder of such shares.

     **5.4.2     Subclass 4b.**  The holders of Subclass 4b Allowed Interests will receive 0.0714726 shares of New Common Stock for each share of Class B Preferred Stock held by the holder of such shares.

     **5.4.3     Subclass 4c.**  The holders of Subclass 4c Allowed Interests will receive 0.074952825 shares of New Common Stock for each share of Class C Preferred Stock held by the holder of such shares.

     **5.4.4     Subclass 4d.**  The holders of Subclass 4d Allowed Interests will receive 0.074952675 shares of New Common Stock for each share of Class D Preferred Stock held by the holder of such shares.

     **5.4.5     Subclass 4e.**  The holders of Subclass 4e Allowed Interests will receive 0.037613086 shares of New Common Stock for each share of Class E Preferred Stock held by the holder of such shares.

     **5.4.6     Subclass 4f.**  The holders of Subclass 4f Allowed Interests will receive 0.016597838 shares of New Common Stock for each share of Common Stock held by the holder of such shares.

     **5.4.7     Subclass 4g.**  The holders of Subclass 4g Allowed Interests may exercise their Option Rights to purchase shares of stock in the Debtor at any time prior to the Effective Date and will thereupon be deemed holders of Allowed Interests in the applicable Subclass and be entitled to receive shares of New Common Stock as provided under the applicable provision of ¶¶ 5.4.1 through 5.4.6 above.  The exercise

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

price shall be paid to the Reorganized Debtor on or before the Effective Date.  In the event the holder of any Option Rights fails to exercise such Option Rights prior to the Effective Date, then such Option Rights shall be extinguished.

## ARTICLE VI  -  TREATMENT OF DISPUTED CLAIMS AND INTEREST

**6.**      Disputed Claims and Interests shall be treated in the manner set forth below.

**6.1**      In calculating the cash to be distributed to Allowed Claims, all Disputed Claims will be treated as if they were Allowed Claims in the full amount thereof; provided, however, that the cash so allocated to Disputed Claims will not be distributed, but will be held in trust by the Reorganized Debtor for the benefit of the holders of Allowed Claims ultimately entitled thereto.

**6.2**      At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall deliver to the holder of the Allowed Claim the cash allocable to such Allowed Claim.

## ARTICLE VII  -  MEANS FOR IMPLEMENTATION OF THE PLAN

**7.**      The Debtor, Debtor in Possession, and Reorganized Debtor shall perform or shall have performed all acts required of it.

**7.1**      Except as provided in this Plan, in accordance with 11 U.S.C. § 1141, on Confirmation all assets of the Estate shall be revested in the Reorganized Debtor.  The Reorganized Debtor shall make the payments required by the Plan, shall assume the liabilities with respect to assumed contracts and claims as required under the Plan, shall satisfy all Administrative Expense Claims, and shall make all other payments required after the Effective Date.

**7.2**      Except as provided in ¶ 7.4 below, all rights, claims and causes of action, whether equitable or legal, of the Estate, the Debtor, Debtor in Possession, and Reorganized Debtor against all persons are reserved for the Debtor, Debtor in Possession, and

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

Reorganized Debtor.  Following confirmation the Reorganized Debtor may commence adversary proceedings against persons or entities to realize upon causes of action retained under the Plan.  If the Reorganized Debtor prosecutes or, where appropriate, settles and compromises, any action transferred to it, then the net proceeds of such action shall be retained by the Reorganized Debtor for use in the ordinary course.

**7.3**    In the event the Reorganized Debtor prosecutes the Patent Litigation, then the net proceeds from such action shall be used to prepay any remaining obligations to the holders of Secured Claims and Unsecured Claims to the extent the holders of such claims are entitled to payments under the provisions of ¶ 5.2.1.1, ¶ 5.2.2.1, ¶ 5.2.3.1, ¶ 5.2.4.1, ¶ 5.2.5.1, or ¶ 5.3.1.1.  Any pre-payments to holders of Claims shall be made in the following order, Subclass 2a, Subclass 2b, Subclass 2c, Subclass 2d, Subclass 2e-n, Class 3.  For the purpose of this ¶ 7.3, net proceeds shall mean any the proceeds from any recovery less all attorneys fees, costs and reimbursements due to the Debtor's insurer on account of any recovery.

**7.4**    All rights, claims and causes of action, whether equitable or legal, of the Estate, the Debtor, Debtor in Possession, and Reorganized Debtor against all persons arising under Chapter 5 of the Bankruptcy Code, under State or Federal law for the positive recovery of avoidable fraudulent conveyances or other transfers are reserved for the benefit of the holders of Class 3 Unsecured Claims.  The Committee shall administer the prosecution of such claims and is authorized as the Estate's representative to pursue such claims pursuant to the provisions of 11 U.S.C. § 1123.  Following Confirmation the Committee may commence adversary proceedings against persons or entities to realize upon causes of action retained under the Plan.  If the Committee prosecutes or, where appropriate, settles and compromises, any action transferred to it, then the net proceeds of such actions shall be distributed Pro Rata by the Committee to the holders of Allowed Class 3 Claims.  An identification of the possible defendants who may be pursued for such claims is set forth on Exhibit A to this Plan, which is incorporated herein by reference.  Nothing in this ¶ 7.4, however, constitutes a

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

transfer of rights to the defensive use of the provisions of Chapter 5 of the Bankruptcy Code or State or Federal law regarding fraudulent conveyances with respect to objections to the allowance of Claims.

**7.5** The Reorganized Debtor shall resolve the claims of all creditors and interestholders.

**7.6** Any objection to a claim by a party in interest in the Reorganization Case must be filed on or before sixty (60) days following the Confirmation Date unless said time period is extended by the Bankruptcy Court for cause shown; provided, however, that the foregoing limitation does not apply to any claims filed subsequent to Confirmation.

**7.7** Pursuant to § 347(b) of the Bankruptcy Code, ninety (90) days after any distribution by the Reorganized Debtor or the Disbursing Agent provided for herein, the Reorganized Debtor or the Disbursing Agent, as the case may be, shall stop payment on any such check remaining unpaid to a holder of an Allowed Claim and funds shall be returned to the payor for use or redistribution in accordance with the provisions of this Plan. From and after the date the Reorganized Debtor stops payment on any distribution check pursuant to this ¶ 7.7, the holder of the claim on account of which such check was issued shall be entitled to receive no further distributions on account of his claim and such holder's Allowed Claim shall thereupon be deemed satisfied in full.

**7.8** The deadline for submission of all claims entitled to priority pursuant to §§ 507(a)(1), (a)(2) and (b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professional persons and Post Confirmation Expenses shall be thirty (30) days following Confirmation. Failure to file a claim by this date shall conclusively bar the claimant from asserting its Claim, which Claim shall be forever barred from sharing in the distributions under the Plan.

**7.9** The Debtor shall close the Convertible Financing pursuant to the terms of the Term Sheet attached hereto as Exhibit B.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**7.10** The record date for purposes of distributions under this Plan shall be the close of business on the Confirmation Date. The Debtor will rely on the register of proofs of claim filed in the Case and its stock records to identify holders of Claims and Interests except to the extent a notice of transfer of Claim or Interest has been filed with the Court prior to the Confirmation Date pursuant to Bankruptcy Rule 3001 or the Debtor has actual notice of a permitted post-confirmation transfer.

**7.11** On and after the Effective Date, the Reorganized Debtor shall continue to operate its business. All assets of the Debtor shall vest in the Reorganized Debtor on the Effective Date unless previously liquidated or sold.

**7.12** On or before the Effective Date, the Reorganized Debtor's corporate articles of incorporation and by-laws shall be amended and restated to prohibit the issuance of non-voting equity security to the extent required by Code § 1123(a)(6) and such other modifications as may be approved in the Confirmation Order ("Restated Articles of Incorporation" and "Restated By-Laws"). A form of Restated Articles of Incorporation and Restated By-Laws shall be filed as part of the Plan Supplement. Such documents will provide for a ratification and confirmation of indemnification rights of directors and officers of the Debtor and affiliates who served post-petition and payment of premiums for reasonable director and officer insurance for such parties.

**7.13** The board of directors of Reorganized Debtor shall be reconstituted on the Effective Date in a manner consistent with the Restated Articles of Incorporation and shall be initially composed of individuals to be proposed at least 10 days prior to the Confirmation Hearing and set forth in the Confirmation Order.

**7.14** Except as otherwise expressly provided in the Plan, Restated Articles of Incorporation, Restated By-Laws or Confirmation Order, confirmation of the Plan shall operate pursuant to Section 1141(d)(1) of the Code as a discharge, effective as of the close of the Effective Date, of any and all debts and liabilities of, and any Claims or Liens against and

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

Interests in, the Debtor or any of its assets that existed or arose at any time before Confirmation. On and after the Effective Date, as to every discharged debt, liability, Claim, Interest or Lien, the Creditor or other holder that held such debt, liability, Claim, Interest or Lien shall be precluded and enjoined from asserting or pursuing against (i) the Debtor, (ii) the Debtor's assets or properties, (iii) the Reorganized Debtor or (iv) the Reorganized Debtor's assets or properties, the Claim, Lien or Interest, or any other or further Claim based on any document, instrument, act or omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

7.15    Except for willful misconduct or bad faith, neither the Debtor nor the directors, officers, agents, Affiliates, Associates and Professionals of the Debtor (collectively, the "Company-Related Parties") or the Committee nor its members, agents, Affiliates, Associates and Professionals (collectively, the "Committee-Related Parties"), and all of the foregoing in any capacity whatsoever, shall be liable to any person or entity for any post-petition action, failure or omission to act or other matter related to the Debtor and/or the Case. All parties are permanently enjoined from initiating a suit against the Reorganized Debtor, the Debtor, the Company-Related Parties, the Committee, and the Committee-Related Parties, except for willful misconduct or bad faith on the part of any such parties.

7.16    A Management and Employee Incentive Plan shall be filed as part of the Plan Supplement and approved as part of the Confirmation Order. The Management and Employee Incentive Plan shall include the Employee Profit Sharing Plan, the Stock Incentive Plan and the Executive Compensation Plan.

## ARTICLE VIII - THE CONVERTIBLE FINANCING OFFERING

8.    In addition to the distributions of New Common Stock to the holders of Claims and Interests as set forth above, the following provisions apply to the issuance of Convertible Financing A-Notes in connection with the Convertible Financing Offering.

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**8.1**     Pursuant to the terms and conditions set forth in the Term Sheet, (a) the Reorganized Debtor will issue to the DIP Lenders, and the DIP Lenders have agreed to accept Convertible Financing A-Notes in the aggregate principal amount of the subscriptions. The Convertible Financing A-Notes shall be substantially in the form attached hereto as Exhibit C and shall be convertible into shares of New Preferred Stock in accordance with the Term Sheet.

**8.2**     The Debtor will cause a Subscription Commitment Agreement and other offering materials to be delivered to each holder of a Claim or Interest, offering each holder of a Claim or Interest the right, pursuant to and on the terms and conditions of the Reorganized Debtor Convertible Note Offering, to make an advance to the Reorganized Debtor in exchange for the issuance of a Convertible Financing A-Note.

**8.3**     The Reorganized Debtor Convertible Financing Offering shall expire on the Subscription Expiration Date.  After the Subscription Expiration Date, no additional Subscription Commitment Agreements will be accepted without the written consent of the DIP Lenders, and the Reorganized Debtor shall not be obligated to honor any purported Subscription Commitment Agreements received after such expiration, regardless of when the documents relating to such Subscription Commitment Agreements were sent.

**8.4**     On or before the Subscription Expiration Date, the funds being advanced pursuant to any Subscription Commitment Agreement shall, pursuant to the provisions of ¶ 8.7 below, be paid by each Creditor or Interestholder timely executing and returning a Subscription Commitment Agreement and such funds shall be held in escrow, pending the final closing of the Convertible Financing Offering provided herein.

**8.5**     On the Convertible Financing Closing Date, the Reorganized Debtor shall issue a Convertible Financing A-Note to each subscribing Creditor or Interestholder, in exchange for all funds advanced.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**8.6**     The subscription rights of the Creditors and Interestholders provided herein are not transferable.  Accordingly, any purported transfer shall be null and void and of no effect.  Any subscribing Creditor or Interestholder that breaches its obligations to subscribe for and make payment on the account of the Convertible Financing A-Note pursuant to a Subscription Commitment Agreement that has been accepted by the Reorganized Debtor shall forfeit (i) as liquidated damages the funds delivered pursuant to Section 8.7 and (ii) its entire entitlement to receive a Convertible Financing A-Note pursuant to its Subscription Commitment Agreement.

**8.7**     Any subscribing Creditor or Interestholder shall make its subscription commitment by causing its Subscription Commitment Agreement to be executed and delivered to the Reorganized Debtor on or prior to the Subscription Expiration Date and shall tender the Committed Funds Deposit (as defined in this paragraph) in accordance with the procedures set forth herein and in the Subscription Commitment Agreement.  In order for any Subscription Commitment Agreement to be effective, a subscribing Creditor or Interestholder shall tender as a deposit the amount of cash that would be necessary to obtain the issuance of a Convertible Financing A-Note subscribed for pursuant to such holder's Subscription Commitment Agreement (the "Committed Funds Deposit").  All questions concerning the timelines, viability, form and eligibility of any Subscription Commitment Agreements shall be determined by the Debtor in its reasonable discretion (and with the consent of the DIP Lenders), whose determination shall be final and binding.  The Debtor, in its reasonable discretion (and with the consent of the DIP Lenders), may, but shall not be obligated to, waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as they may determine, or reject one or more purported Subscription Commitment Agreements.  Subscription Commitment Agreement defects shall be deemed to have been waived or cured within such time as the Debtor shall determine, in its reasonable discretion (and with the consent of the DIP Lenders).  The Debtor shall be

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

under no duty to give notification of any defect or irregularity in connection with the submission of Subscription Commitment Agreements or incur any liability for failure to give such notification.

**8.8**     Within ten (10) Business Days after the Subscription Expiration Date, the Debtor shall notify the DIP Lenders of the aggregate amount of Convertible Financing A-Notes subscribed for by Creditors or Interestholders.

**8.9**     Each Creditor or Interestholder entering into a Subscription Commitment Agreement shall consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the resolution of any dispute arising thereunder, including, without limitation, in respect of payment of the Committed Funds Deposit and in respect of the terms of the Convertible Financing Offering set forth in the Plan.

## ARTICLE IX  -  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.**     The Plan shall be deemed to constitute and incorporate a motion by the Debtor to reject all executory contracts and unexpired leases to which the Debtor is a party or is otherwise bound, except for the contracts and leases that (a) have been assumed, assumed and assigned, consensually terminated or rejected pursuant to an order of the Court entered prior to the Effective Date, (b) are specifically treated otherwise in this Plan, or (c) are the subject of a motion to assume or assume and assign that is pending before the Court on the Effective Date.  The Confirmation Order shall represent and reflect an order of the Court approving the assumptions and rejections as of the Confirmation Date, unless otherwise provided in this Article 9.  Any cure costs that Reorganized Debtor is required to pay by a Final Order in connection with an assumed contract or lease shall be treated as an administrative expense of the Case.

**9.1**     If the rejection of an executory contract or unexpired lease by the Debtor pursuant to Article 9 of the Plan results in damages to the counterparty to such contract or

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

lease, then a Claim for damages or any other amounts related in any way to such contract or lease shall be forever barred and shall not be enforceable against the Debtor, its successors and assigns or its property, unless a proof of claim is filed with the Court within thirty (30) days of the Confirmation Date. The rejection claim bar date for leases and contracts rejected prior to Confirmation shall be the date set forth in the applicable order rejecting such lease or contract.

**9.2**     Entry of the Confirmation Order shall constitute the assumption of the Assumed Contracts and Leases as of the Effective Date. The list of Assumed Contracts and Leases is attached hereto as Exhibit E.

**9.3**     If there are unresolved disputes (including with respect to cure amounts) as to any proposed Assumed Contracts and Leases, the Confirmation Order may provide a mechanism by which the Reorganized Debtor may elect to reject such contract or lease after the Effective Date if such dispute is not resolved to the satisfaction of the Reorganized Debtor; provided, however, that such contract or lease shall not be deemed assumed or rejected until such dispute has been resolved by a Final Order.

## ARTICLE X  -  MODIFICATIONS OF THE PLAN

**10.**  Pursuant to the provisions of § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior or subsequent to Confirmation.

## ARTICLE XI  -  RETENTION OF JURISDICTION

**11.**     Notwithstanding Confirmation, until entry of the Closing Order, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**11.1**     to determine the classification of the Claims of any Creditor or Interests of any Interestholder and the determination of such objections as may be filed with respect to the Claims and Interests, including proceedings for estimation of Claims or Interests pursuant to Code §502(c);

**11.2**     to determine all questions and disputes regarding title to the assets of the Debtor, all controversies, disputes or conflicts, whether or not subject to any pending action as of the Effective Date, between the Debtor or Reorganized Debtor and any other party;

**11.3**     to modify the Plan with the consent of the Reorganized Debtor after the Effective Date but prior to substantial consummation of the Plan;

**11.4**     to construe, interpret, implement and enforce the terms and conditions of the Plan, Confirmation Order, the Term Sheet and other related documents;

**11.5**     to determine issues and disputes concerning entitlement to distributions to be made under and pursuant to this Plan;

**11.6**     to enter such orders, including, but not limited to, such future injunctions as are necessary to enforce the respective title, rights and powers of the Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary;

**11.7**     to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to implement the purposes and intent of the Plan;

**11.8**     to determine any and all objections to the allowance of Claims or Interests, including, without limitation, any counterclaims and rights of setoff,

**11.9**     to determine any and all applications for allowance of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Code or the Plan;

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:     (206) 292-8930

**11.10**  to determine any and all applications or motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease, and to hear and determine, and, if need be, to liquidate any and all Claims arising therefrom;

**11.11**  to determine any and all applications, adversary proceedings and contested matters, including any adversary proceeding concerning any Cause of Action, that may be pending on or initiated after the Effective Date relating to matters that arose prior to the Effective Date;

**11.12**  to consider any technical or immaterial modification of the Plan, whether or not the Plan has been substantially consummated, to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order or any other order of the Court, to the extent authorized by the Plan or the Code and requiring Court approval;

**11.13**  to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, any agreements or instruments issued under or relating to this Plan or any other documentation evidencing the terms of this Plan;

**11.14**  to consider and act on the compromise and settlement of any Claim against or Cause of Action by or against the Debtor or Reorganized Debtor arising under or in connection with the Plan;

**11.15**  to issue such orders in aid of execution of the Plan as may be authorized by Code § 1142;

**11.16**  to hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court;

**11.17**  to liquidate damages in connection with any disputed, contingent or unliquidated Claims or Interests;

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

**11.18**   to adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof and for adequate protection claimed by any holder of such Claims;

**11.19**   to adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Case; and

**11.20**   to determine such other matters or proceedings as may be provided for under Title 28 or other title of the United States Code, the Code, the Bankruptcy Rules, other applicable law, the Plan or in any order or orders of the Court, including, but not limited to, the Confirmation Order or any order which may arise in connection with the Plan or the Confirmation Order.

## ARTICLE XII  -  MISCELLANEOUS PROVISIONS

**12.**   The following Miscellaneous Provisions apply.

**12.1**   In the event this Plan is not confirmed under Code § 1129(a), the Debtor requests that this Plan be confirmed under Code § 1129(b) with respect to any class of Creditors or Interestholders which do not vote to accept the Plan.

**12.2**   On the Effective Date, any and all of the Causes of Action shall vest in Reorganized Debtor.

**12.3**   The Committee shall not be dissolved on the Effective Date, but shall continue in existence for the purpose of investigating and pursuing any Causes of Action for the recovery of preferential or fraudulent transfers as provided in ¶ 7.4 above.

**12.4**   On the Effective Date, all writings evidencing indebtedness of the Debtor shall be deemed to be canceled as against the Debtor, and the holders of those writings shall have no further rights against the Debtor under the writings, except as they may have as the holder of an Allowed Claim or as otherwise provided in this Plan or documents executed in connection with this Plan.

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA  98101-1618
Telephone:    (206) 292-8930

**12.5** Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

**12.6** Except to the extent that the Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Washington, without giving effect to choice of law principles.

**12.7** The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

**12.8** Except as otherwise provided in this Plan, the Debtor may, but shall not be required to, set off or counterclaim against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of the Claim, claims of any nature whatsoever the estate may have against the holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any claim that the estate may have against the holder; provided, however, that the Debtor will not seek to set off or counterclaim for any obligation that is not yet due. Setoffs or counterclaims arising from events after the Petition Date shall reduce the payouts under any Allowed Claim dollar for dollar. Setoffs or counterclaims arising from pre-petition events shall only reduce the amount of the Allowed Claim and therefore, shall only reduce the payout amount proportionally with the reduction in the Allowed Claim. If any counterclaim or setoff asserted by the Debtor exceeds the amount of any Claim, the holder of such Claim shall not be entitled to any distribution under the Plan, and the Debtor will reserve the right to recover any such excess counterclaim or setoff from the holder of the applicable Claim.

**12.9** Unless this Plan is revoked and withdrawn, the provisions of this Plan shall bind all Creditors and Interestholders, whether or not they vote to accept the Plan.

**12.10** Except as expressly provided in this Plan and the documents executed in connection with this Plan, the Confirmation Order shall contain an injunction, embodying the

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:     (206) 292-8930

protections of the automatic stay of Code §362(a), against the prosecution against the Debtor of any Claim or Interest, whether or not a proof of claim or proof of Interest based on any such debt, liability, or Interest is filed under Code § 502, including the pursuit of any Creditor's or Interestholder's derivative actions against any third party derived from the rights and interests of the Debtor or the Debtor's estate.

**12.11** Forms of certain key documents necessary or appropriate to implement the terms of this Plan may be filed with the Court as one or more Plan Supplements prior to the Confirmation Date.

### ARTICLE XIII - CONDITIONS TO THE EFFECTIVENESS OF THE PLAN

**13.** All of the following conditions must occur and be satisfied for this Plan to be effective:

**13.1** The Confirmation Order must be signed by the judge of the Court and duly entered on the docket for the Case by the clerk of the Court.

**13.2** There must be no stay in effect with respect to the Confirmation Order.

**13.3** The transactions contemplated by the Term Sheet shall have occurred.

**13.4** All of the closing conditions set forth in the Term Sheet shall have been satisfied or have been waived.

Signed this ___27th___ day of February, 2004.

ONENAME CORPORATION.


By: _/s/ Lon Wiese_____
      Lon Wiese
      Executive Vice President
      Chief Financial Officer

3386496.1

**Bullivant|Houser|Bailey PC**
2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone: (206) 292-8930

# EXHIBIT A

## RESERVED CAUSES OF ACTION

(To Be Supplemented Prior to Approval of Disclosure Statement)

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

# EXHIBIT B

## TERM SHEET FOR CONVERTIBLE FINANCING

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930

# EXHIBIT C

## FORM CONVERTIBLE FINANCING A NOTE

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA  98101-1618
Telephone:    (206) 292-8930

# EXHIBIT D

## FORM CONVERTIBLE FINANCING B NOTE

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone: (206) 292-8930

**EXHIBIT E**

**ASSUMED CONTRACTS AND LEASES**

1.   Lloyds Insurance Policy
2.   XNS Global Community Services Provider Agreement
3.   XNS Intellectual Property Rights Contract (License)
4.   OASIS Agreement
5.   Post-Petition LOI with Tech Horizons and NeuStar
6.   Rohde fee agreement
7.   Current employee contracts
8.   Epok, Inc. license
9.   Non-Disclosure Agreements (to extent executory)
10.  Settlement Agreements with Keri Moran and David Haines
11.  Executive Deferral Agreements
12.  Non-Executive Deferral Agreements
13.  Identity Commons Letter of Intent
14.  All other post-petition contracts

**Bullivant|Houser|Bailey PC**

2400 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:   (206) 292-8930