Lawrence R. Ream, WSBA #18159
Richard G. Birinyi, WSBA #9212
Bullivant Houser Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, WA 98101-1618
Telephone: (206) 292-8930
Facsimile: (206) 386-5130

Attorneys for Debtor

Hon. Philip H. Brandt
Chapter: 11
Location: Seattle

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

In re:

ONENAME CORPORATION,

    Debtor.

No.: 03-22581

DEBTOR'S EX PARTE MOTION PURSUANT TO 11 U.S.C. SECTION 364(c) FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT WITH PFS FINANCE INCORPORATED

COMES NOW OneName Corporation (the "Debtor") and hereby moves *ex parte*, pursuant to 11 U.S.C. § 364(c) and Fed. R. Bankr. P. 4001(c), for authority (a) to enter into a Premium Finance Agreement (the "Agreement") with Premium Financing Specialists, Inc. ("PFS") and (b) to grant PFS a first-priority lien and security interest in all unearned or return premiums and dividends which may become payable under the policies identified in the Agreement, and a lien and security interest in loss payments which reduce the unearned premiums subject only to any loss payee interests, and further requests that any deficiency claim of PFS remaining in the event that PFS must proceed against its collateral be afforded administrative expense priority under 11 U.S.C. § 364(c)(1). In support of its Motion, the Debtor states as follows:

1. The Debtor commenced this case by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., on September 30, 2003. The

Page 1 – EX PARTE MOTION PURSUANT TO 11 U.S.C. SECTION 364(c) FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT WITH PFS FINANCE INCORPORATED

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, WA 98101-1618
Telephone: (206) 292-8930

1  Debtor continues to operate its business and manage its property as a debtor-in-possession
2  pursuant to 11 U.S.C. §§ 1107 and 1108.

3  2.  In the ordinary course of its business, the Debtor must maintain various insurance
4  policies. The Debtor has in the ordinary course of its business, financed the premiums for
5  the insurance policies identified in the Agreement, and has been unable, after reasonable
6  efforts, to obtain unsecured credit for such payment pursuant to title 11 U.S.C. § 364(a).

7  3.  The Debtor has previously engaged in discussions with various companies in the
8  business of providing insurance premium financing, and has determined that PFS offers the
9  most advantageous terms for such financing. A copy of the Debtor's proposed Agreement
10 with PFS is attached hereto as <u>Exhibit "A"</u>.

11 4.  The insurance policies identified in the Agreement are crucial to the operation of
12 the Debtor's business. The policies are set to expire on December 30, 2004. Thus, the relief
13 sought herein is in the best interest of the estate and its creditors and is sought as a
14 Preliminary Stipulated Order, subject to a subsequent hearing on notice to creditors. The
15 Preliminary Order is necessary to prevent irreparable harm.

16 5.  After notice and a hearing with this Court, the Debtor financed its directors and
17 officers' insurance premiums for 2004 with PFS, pursuant to the Order dated June 25, 2004.

18 6.  The Agreement with PFS for 2005 would require the Debtor to make a down
19 payment to PFS in the amount of $16,799.80, and to make monthly payments in the amount
20 of $5,044.68 each over a term of 9 months. The annual percentage rate is 12.5% and the
21 total amount financed under the Agreement is $59,904.80. PFS just recently advised the
22 Debtor that it requires a Court Order approving the financing set forth in the Agreement.

23 7.  The Agreement grants PFS a lien and security interest in any and all unearned or
24 return premiums and dividends which may become payable under the policies identified in
25 the Agreement. This property is not otherwise subject to a lien. The Debtor requests, and
26 the proposed order submitted herewith (the "Order") provides, that PFS' lien and security

Page 2 – EX PARTE MOTION PURSUANT TO 11 U.S.C. SECTION 364(c) FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT WITH PFS FINANCE INCORPORATED

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, WA 98101-1618
Telephone:  (206) 292-8930

interest in such premiums and dividends shall be senior to the rights of the Debtor's estate in this or any subsequent proceeding under the Bankruptcy Code and to the rights of any person claiming a lien or security interest in any assets of the Debtor.

8. The Agreement also assigns to PFS as security any loss payments under the policies which reduce the unearned premiums. The Debtor requests that PFS' lien and security interest in such payments shall be senior to the rights of the Debtor's estate in this or any subsequent proceeding under the Bankruptcy Code, but shall be subject to the interest of any payees.

9. The Debtor requests, and the Order provides, that PFS' liens and security interests shall be deemed duly perfected without further action by PFS.

10. In the event of a default by the Debtor in making the monthly payments under the Agreement, but subject to a 10-day notice and cure period, the Agreement allows PFS to cancel the insurance policies identified in the Agreement and apply to the Debtor's account the unearned or return premiums and dividends and, subject to the rights of loss payees, any loss payments which reduce the unearned premiums. The Debtor requests that PFS may exercise its rights under the Agreement in the event of such default without moving for relief from the automatic stay of 11 U.S.C. § 362 and without further order of this Court.

11. The Debtor also requests that any sums that remain due after PFS has exercised its rights after default shall be deemed an administrative expense of this estate, entitled to priority over any and all administrative expenses of the kind specified in 11 U.S.C. § 503(b) or 507(b), pursuant to 11 U.S.C. § 364(1).

12. Counsel for the unsecured creditors committee, George C. Kosmos and Perkins Coie LLP, have all stipulated to the entry of an order approving the premium finance agreement. The only loss payee under the policies identified in the Agreement is the Debtor, OneName Corporation.

13. PFS is extending financing under the Agreement in good faith within the meaning

Page 3 – EX PARTE MOTION PURSUANT TO 11 U.S.C. SECTION 364(c) FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT WITH PFS FINANCE INCORPORATED

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, WA 98101-1618
Telephone: (206) 292-8930

1 | of 11 U.S.C. § 364(e).

2 | WHEREFORE, the Debtor prays that the Court enter the Stipulated Order for

3 | Preliminary Relief, subject to a further hearing on Notice to Creditors and grant such other

4 | and further relief as may appear just.

5 | DATED this 17th day of December, 2004.

6 | BULLIVANT HOUSER BAILEY PC

8 | By  /s/ Lawrence R. Ream
 | Lawrence R. Ream, WSBA #18159

9 | Attorneys for Debtor

11 | 3400637.1

Page 4 – EX PARTE MOTION PURSUANT TO 11 U.S.C. SECTION 364(c) FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT WITH PFS FINANCE INCORPORATED

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, WA 98101-1618
Telephone: (206) 292-8930



| | | | |
|---|---|---|---|
| **PFS** | P O BOX 3029<br>BOTHELL,WA 98041<br>(425)951-7800 FAX: (425)951-7812 | **Premium Financing Specialists, Inc.**<br>A MISSOURI CORPORATION, HOME OFFICE, KANSAS CITY, MISSOURI<br>**PREMIUM FINANCE AGREEMENT** | |

| | | | | |
|---|---|---|---|---|
| **A** | **CASH PRICE (TOTAL PREMIUMS)** | $59,904.80 | **AGENT** (Name & Place of business)<br>FISHERMEN'S INSURANCE SERVICES,<br><br>2815 EASTLAKE AVENUE EAST<br>SUITE 240<br>SEATTLE        WA   98102-3007<br>(206)270-3400 | **INSURED** (Name and residence or business)<br>ONENAME CORPORATION<br>C/O DRUMMOND REED<br>3020 ISSAQUAH PINE LAKE RD SE<br>#74<br>SAMMAMISH       WA   98075-7253<br>(206)364-0992 |
| **B** | **CASH DOWN PAYMENT** | $16,779.80 | | |
| **C** | **PRINCIPAL BALANCE (A MINUS B)** | $43,125.00 | | |

**LOAN DISCLOSURE**                                                                                   Quote Number: 9338

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate.<br>12.5 % | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br>$2,277.12 | Amount Financed<br>The amount of credit provided to you or on your behalf.<br>$43,125.00 | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled.<br>$45,402.12 |
|---|---|---|---|

**YOUR PAYMENT SCHEDULE WILL BE**

| Number of Payments | Amount of Payments | When Payments Are Due | MONTHLY |
|---|---|---|---|
| 9 | $5,044.68 | Beginning: | 1/30/2005 |

ITEMIZATION OF THE AMOUNT FINANCED:
THE FULL AMOUNT FINANCED WAS PAID TO THE INSURANCE COMPANY.

**Security:** You are giving a security interest in the unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium of the policies.
**Late Charges:**  A late charge will be imposed on any installment in default 5 days or more.  This late charge will be 5% of the installment due.

**Prepayment:** If you pay your account off early, you will not have to pay a penalty and may be entitled to a refund of part of the finance charge. See your contract documents for any additional information about non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES<br>INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL. TRMS | PREMIUM |
|---|---|---|---|---|---|
| PENDING | 12/30/2004 | ILLINOIS UNION INSURANCE COMPANY<br>ALEXANDER MORFORD & WOO INC | D&O<br><br>FEES<br>TAXES | 12 | $27,500.00<br><br>$938.30<br>$566.50 |
| PENDING | 12/30/2004 | RSUI INDEMNITY COMPANY<br>ALEXANDER MORFORD & WOO INC | EXCESS<br><br>FEES | 12 | $30,000.00<br><br>$900.00 |
| (CHECK CORRECT BOX)     ☐ PERSONAL     ☑ COMMERCIAL | | | | TOTAL $ | $59,904.80 |

The undersigned insured directs Premium Financing Specialists, Inc. (herein, "PFS") to pay the premiums on the policies described above. In consideration of such premium payments the insured agrees to pay PFS at the branch office address shown above, or as otherwise directed by PFS the amount stated as Total of Payments in accordance with the Payment Schedule, both as shown in Loan Disclosure, subject to the Provisions herein set forth.
The named insured:
1. Assigns to PFS as security for the total amount payable hereunder all unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium which become payable under the policies listed above, as to all of which insured gives to PFS a security interest.
2. Irrevocably appoints PFS  **attorney-in-fact**  of the insured with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to PFS or in which it has granted PFS a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.
3. Understands that the finance charge begins to accrue as of the earliest policy effective date.

4. Agrees to all provisions set out on pages 1 and 2 of this agreement.
**NOTICE:**
**A. Do not sign this agreement before you read it or if it contains any blank space.**
**B. You are entitled to a completely filled in copy of this agreement.**
**C. Under the law, you have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.**

**D. Keep your copy of this agreement to protect your legal rights.**

_____    _____
Signature of Insured or Authorized Agent          DATE
The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____    _____
SIGNATURE OF AGENT                               DATE

FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured and PFS agree that:

**5. EFFECTIVE DATE:** This Agreement shall be effective when written acceptance is mailed to the insured by PFS.

**6. PREPAYMENT:** The insured may prepay the full amount due under this Agreement and receive a refund of a portion of the finance charge as required or permitted by law. Any minimum or fully earned fees will be deducted as permitted by law.

**7. DELINQUENT PAYMENTS:** The acceptance by PFS of one or more late payments from the insured shall not estop PFS or be a waiver of the the rights of PFS to exercise all of its rights hereunder in the event of any subsequent late payment.

**8. CANCELLATION:** PFS may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement and the unpaid balance due to PFS shall be immediately payable by the insured. PFS at its option may enforce payment of this debt without recourse to the security given to PFS.

**9. CANCELLATION CHARGES:** If PFS cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the insured will pay PFS a cancellation charge, if permitted, up to the limit specified by law. If cancellation occurs, the insured agrees to pay a finance charge on the balance due at the contract rate of interest until the balance is paid in full or until such other dates as required by law. (Not applicable in KY and VT)

**10. INSUFFICIENT FUNDS (NSF) CHARGES:** If an insured's check or electronic funding is dishonored for any reason, the insured will pay to PFS a fee, if permitted by law, of $20 or the maximum permitted by law. (Not applicable in KY)

**11. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to PFS after PFS' Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of PFS to request reinstatement of the policy. Any money PFS receives from an insurance company shall be credited to the balance due PFS with any surplus refunded to whomever is entitled the money. In the event that PFS does request a reinstatement of the policy on behalf of the insured, such a request does not guarantee that coverage under the policy will be reinstated or continued. Only the insurance company has authority to reinstate the policy. The insured agrees that PFS has no liability to the insured if the policy is not reinstated.

**12. ASSIGNMENT:** The insured agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of PFS, that PFS may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon PFS shall insure to the benefit of PFS' successors and assigns (and any assignees thereof).

**13. INSURANCE AGENT OR BROKER:** The insured agrees that: the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of PFS; and the agent or broker named on the front of this Agreement is neither authorized by PFS to receive installment payments under this Agreement nor is to make representations, orally or in writing, to the insured on PFS' behalf (except to the extent expressly required by applicable law). Where permissible by law, some portion of the finance charge may be paid by PFS to the insurance agent or broker executing this agreement as payment for his assistance in arranging the financing of your insurance premium. If you have any questions about this payment you should contact the agent/broker.

**14. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**15. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to PFS to the extent permitted by law, if this Agreement is referred to an attorney, who is not a salaried employee of PFS, to collect any money insured owes under this Agreement. (Not applicable in KY)

**16. LIMITATION OF LIABILITY:** The insured agrees that PFS's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of PFS' gross negligent or willful misconduct. (Not applicable in KY)

**17. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**18. REPRESENTATIONS AND WARRANTIES:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, and all parties responsible for payment of the premium are named and have signed this Agreement.

**19. ENTIRE DOCUMENT:** This document is the entire Agreement between PFS and the insured and can only be changed in writing and signed by both parties except that the insured authorizes PFS to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). PFS is also authorized to correct patent errors and omissions in this Agreement. The laws of the state indicated in the insured's address on the Agreement will govern this Agreement.

AGENT'S REPRESENTATION

The agent/broker executing this agreement represents, warrants and agrees: (1) the insured has received a copy of this Agreement and has authorized this transaction, the insured's signature is genuine, and the down payment has been received from the insured in cash, (2) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (3) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (4) the policies can be cancelled by the insured or PFS (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (5) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (6) to hold PFS, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent in preparing this agreement, and (7) to pay the down payment and any funding amounts received from PFS under this Agreement to the insurance company or general agent (less any commissions where applicable) (8) to hold in trust for PFS any payments made or credited to the insured through or to you directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to PFS upon demand to satisfy the outstanding indebtness of the insured.