Lawrence R. Ream, WSBA #18159
Richard G. Birinyi, WSBA #9212
Bullivant Houser Bailey PC
2300 Westlake Office Tower
1601 Fifth Avenue
Seattle, WA 98101-1618
Telephone:    (206) 292-8930
Facsimile:    (206) 386-5130

Attorneys for Debtor

Hon. Philip H. Brandt
Chapter: 11
Location: Seattle

## UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| In re: | No.: 03-22581 |
| ONENAME CORPORATION, | PLAN OF REORGANIZATION Dated April 14, 2005 |
| Debtor. | |

**OneName Corporation, as debtor and debtor-in possession, proposes this Plan of Reorganization pursuant to § 1121 (a) of the United States Bankruptcy Code.**

## ARTICLE I - DEFINITIONS AND INTERPRETATION

**1.** The following boldface terms, when capitalized, shall have the meanings specified below, and such meanings shall be equally applicable to the singular and plural forms of such terms. Any term used in this Plan that is not defined herein, but is defined in the United States Bankruptcy Code or the Federal Rules of Bankruptcy Procedures, shall have the meaning ascribed to that term in the Code or the Bankruptcy Rules.

**1.1 Administrative Expense Claim** means a Claim or portion of a Claim allowed under Code § 503(b) and entitled to priority under Code § 507(a)(1). This shall include any

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

cure costs under Assumed Contracts and Leases as determined by this Court pursuant to the procedures approved by this Court to fix such cure costs.

**1.2 Allowable § 506(b) Amounts** means all fees, costs, expenses, interest and other charges due or coming due in respect of a Secured Claim to the extent allowable under Code § 506(b).

**1.3 Allowed,** when used with respect to any Claim or Interest, means the Claim or Interest or applicable portion thereof that has been allowed pursuant to Code § 502, and, if the Claim or Interest was objected to, means that a Final Order has been entered allowing the Claim or Interest pursuant to Code §502. Unless otherwise specified, the term Allowed does not include (i) interest on the amount of such Claim accruing from and after the Petition Date, (ii) fees and costs incurred from and after the Petition Date, (iii) punitive or exemplary damages or (iv) any fine, penalty or forfeiture.

**1.4 Assumed Contracts and Leases** means those executory contracts and unexpired leases designated by the Debtor from time to time as ones to be assumed on or before the Effective Date, subject to any additions or deletions to such list by the Debtor prior to the Effective Date or as otherwise provided in Article 9 of this Plan.

**1.5 Ballot** means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims and Impaired Interests.

**1.6 Ballot Date** means the date which the Court sets for submission of Ballots on this Plan.

**1.7 Bankruptcy Rules** mean the Federal Rules of Bankruptcy Procedure, as amended and promulgated under § 2075 of Title 28 of the United States Code and local rules of the Court.

**1.8 Case** means the above-captioned bankruptcy case.

**1.9 Causes of Action** means any and all causes of action of the Debtor, whether arising under the Code or other state, federal or common law, including, without limitation,

Page 2- PLAN OF REORGANIZATION Dated April 14, 2005

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

actions under Article V of the Code, but, for the avoidance of doubt, shall not include any causes of action against other parties to the extent released under prior orders in the Case or pursuant to Paragraph 7.15 of this Plan or the Confirmation Order.

**1.10 Claim** means, as against the Debtor, (i) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.11 Class** means a category or group of holders of Claims or Interests as designated in Article 3 of this Plan pursuant to Code § 1122(a)(1).

**1.12 Closing** means the closing of the Convertible Financing contemplated hereby and in the Term Sheet.

**1.13 Closing Date** means the date on which the Closing occurs.

**1.14 Code** or **Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101 et. sec.

**1.15 Committee** means the Official Unsecured Creditors' Committee appointed by the Office of the United States Trustee for the Western District of Washington.

**1.16 Committee-Related Parties** shall have the meaning set forth in Paragraph 7.15 of this Plan.

**1.17 Company-Related Parties** shall have the meaning set forth in Paragraph 7.15 of this Plan.

**1.18 Confirmation** means the entry of the Confirmation Order by the Court pursuant to Code § 1129.

**1.19 Confirmation Date** means the date that the Court enters the Confirmation Order.

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**1.20** **Confirmation Hearing** means the hearing to consider confirmation of this Plan.

**1.21** **Confirmation Hearing Date** means the date on which the Court holds the Confirmation Hearing.

**1.22** **Confirmation Order** means the order of the Court confirming this Plan.

**1.23** **Contested Claim** means a Claim against or Interest in the Debtor, as the case may be, to which an objection has been filed by a party in interest and which objection has not been resolved as of a Final Order, or otherwise.

**1.24** **Contested Claim Reserve** means the reserve maintained for the benefit of holders of Contested Claims in the aggregate asserted amount of Contested Claims to allow sufficient funds for a Pro Rata distribution if ultimately Allowed, unless the Court determines a lesser amount is appropriate after notice to holders of affected Contested Claims and a hearing.

**1.25** **Convertible Financing** means the convertible financing pursuant to Article VIII of the Plan.

**1.26** **Convertible Financing A-Note** means a note issued to a particular holder pursuant to the Convertible Financing having a conversion rate of one share of New Preferred Stock for each $.81 of the liability on the note. (Substantially in the form attached as Exhibit C hereto.)

**1.27** **Convertible Financing B-Note** means a note issued to a particular holder pursuant to the Convertible Financing having a conversion rate of one share of New Preferred Stock for each $4.05 of the liability on the note. (Substantially in the form attached as Exhibit D hereto.)

**1.28** **Convertible Financing Closing** means the final closing of the Convertible Financing which will take place as soon as practicable following the Subscription Expiration Date.

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**1.29    Convertible Financing Offering** means the offering to participate in the Convertible Financing to Creditors and Interestholders, as more fully described in Article 8 of this Plan.

**1.30    Court** means the United States Bankruptcy Court for the Western District of Washington, or such other court of competent jurisdiction exercising jurisdiction over all or part of the Case.

**1.31    Creditor** means the holder of a Claim (other than as holder of an Administrative Expense Claim).

**1.32    Debtor** means the debtor in this Case as a debtor and debtor-in-possession.

**1.33    DIP Financing Facility** means the debtor-in-possession financing facility provided to the Debtor by the Postpetition Lenders, or any successor financing facility.

**1.34    DIP Financing Order** means that certain Final Order Authorizing Post-Petition Borrowing After Final Hearing as entered by the Court on November 10, 2003 approving the DIP Financing Facility and any amendments or extensions thereof.

**1.35    DIP Lenders**:  (see definition of Postpetition Lenders)

**1.36    Disallowed,** when used with respect to a Claim, means that the Claim or applicable portion thereof has been determined by a Final Order to be invalid.

**1.37    Disbursing Agent** means any agent the Debtor elects to employ to make distributions to one or more Classes of Claims under this Plan.

**1.38    Disclosure Statement** means the disclosure statement filed under Code § 1125 in support of this Plan.

**1.39    Effective Date** means the later of (i) the Closing Date or (ii) the eleventh day after the Confirmation Date, calculated in accordance with Bankruptcy Rule 9006, unless the Confirmation has been stayed, in which event it is the first day after such stay is no longer in effect, or such later date as the Debtor shall elect in writing.

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1.40 **Epok Transaction** means the definitive agreement reached between Epok, Inc. on the one hand and OneName on the other for the assignment by OneName to Epok or a designee of Epok, approved by OneName, of various software programs and mutual releases as set forth therein.

1.41 **Exchange Note Holders** means the individual lenders who provided the Debtor with prepetition exchange debt financing.

1.42 **Final Order** means an order or judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which order or judgment the time to appeal, petition for certiorari, or seek reargument, review or rehearing has expired and as to which no appeal, petition for certiorari or motion for reargument, review or rehearing was timely filed or, if timely filed, the order or judgment has been affirmed by the highest court to which the order or judgment was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or petition for certiorari or to seek further reargument or rehearing has expired.

1.43 **Impaired** means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Code § 1124.

1.44 **Interest** means an equity interest in the Debtor.

1.45 **Interestholder** means the holder of an Interest.

1.46 **Kosmos Notes** means the six (6) Promissory Notes issued by George C. Kosmos, as obligor, to the benefit of OneName. These Promissory Notes were issued between the dates of December 28, 2000, and September 5, 2001. These Promissory Notes, along with accrued interest, are payable within five (5) days of demand by the noteholder for such payment.

1.47 **Kosmos Note Claims** means all of the Debtor's right, title and interest, including offset rights related to the enforcement and collection of the Kosmos Notes.

Page 6- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**1.48 Lien** means a charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.49 Management and Employee Incentive Plan** means the Reorganized Debtor's Management and Employee Incentive Plan adopted as of the Effective Date by the Reorganized Debtor pursuant to ¶ 7.16 of the Plan.

**1.50 New Common Stock** means the newly-issued shares of common stock of Reorganized Debtor.

**1.51 New Preferred Stock** means the newly authorized and to be issued shares of preferred stock of Reorganized Debtor having the rights and preferences set forth in the Term Sheet.

**1.52 OneName Liquidation Trust** means that certain OneName Liquidation Trust established pursuant to this Plan and administered pursuant to the terms of the OneName Liquidation Trust Agreement attached as Exhibit F to this Plan of Reorganization.

**1.53 Option Rights** means the right to purchase shares of stock in the Debtor, whether denominated as common options, common warrants, E preferred warrants, or any other right.

**1.54 Patent Litigation** means all litigation the Debtor commences to enforce its pre-petition patents.

**1.55 Petition Date** means September 30, 2003.

**1.56 Plan** means this Plan of Reorganization, as the same may be amended from time to time pursuant to the Plan's terms, the Code or the Bankruptcy Rules and, as applicable, exhibits and schedules referenced therein, whether on file with this document or filed prior to the Confirmation Hearing Date.

**1.57 Plan Supplement** means one or more supplements to the Plan containing documents contemplated to implement the Plan.

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1     **1.58**    **Postpetition Lenders** means the individual lenders who provided the Debtor

2 with the DIP Financing approved by the Bankruptcy Court, together with any successors and

3 assigns. (Also referred to as the DIP Lenders).

4     **1.59**    **Prepetition Secured Note Holders** means the individual lenders who

5 provided the Debtor with prepetition secured debt financing.

6     **1.60**    **Professionals** means any Court-approved professional Person employed by

7 the applicable entity in this Case at any time before Confirmation.

8     **1.61**    **Pro Rata** means the proportion that the amount of an Allowed Claim or

9 Allowed Interest in a particular Class or Subclass bears to the aggregate amount of all

10 Allowed Claims or Allowed Interests in such Class or Subclass (including any Contested

11 Claim Reserve).

12     **1.62**    **Releasing Parties** means Loren West, Lance Hood, Richard White, Sean

13 Boltman, Bert Garcia, Jeff Haux, Juan Maldonado, Dave McAlpin, Kelly Price, Tod

14 Whitman, Drummond Reed and Chris Kosmos, all of whom are makers of Stockholder

15 Notes in favor of OneName.

16     **1.63**    **Remaining Net Recovery** means the amount by which the aggregate of any

17 and all proceeds received from the Patent Infringement Claim exceeds the aggregate of (a)

18 the reasonable and necessary expenses incurred by the Company in pursuing the litigation or

19 on account of any recovery, including payment of all tax obligations, fees, costs and

20 expenses (b) any obligation that may be due and payable to Lloyds of London under the

21 terms of the Licensing Failure Insurance Policy and (c) all payments to the holders of

22 Allowed Secured Claims and Allowed Unsecured Claims pursuant to the terms of ¶ 7.3.

23 Remaining Net Recovery shall not mean or include any value for a "presumed economic

24 benefit" as that term is defined under the Licensing Failure Policy.

25     **1.64**    **Reorganized Debtor** means the Debtor as reorganized pursuant to this Plan.

26     **1.65**    **Restated By-Laws** has the meaning set forth in Paragraph 7.12.

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**1.66    Restated Articles of Incorporation** has the meaning set forth in Paragraph 7.12.

**1.67    Secured Claim** means a secured Claim within the meaning of Code § 506.

**1.68    Secured Exchange Notes** means the exchange notes which became secured by reason of a Prepetition Secured Note Holder's participation in the secured debt financing.

**1.69    Settlement Agreement and Release** means the Settlement Agreement and Release by and between the Debtor, the Reorganized Debtor, the Estate and the Releasing Parties, substantially in the form attached hereto as Exhibit G.

**1.70    Secured Trust Creditor** means the holders of Allowed Claims in SubClasses 2(b), 2(c), 2(d), and 2(e) to the extent of the amount of the Allowed Claim for which such Class 2 claimant does not elect a Convertible Financing A Note or a Convertible Financing B Note; provided, however, that Perkins Coie shall not be a Secured Trust Creditor on account of its SubClass 2(a) or 2(c) Allowed Claim.

**1.71    Stockholder Notes** means the Exercise Notice and Stock Purchase Agreement – Amended and Restated 1995 Stock Incentive Plan (For Early Exercise) executed by former employees of the Debtor to purchase stock in the Debtor and all of its Attachments, including, but not limited to, the form of a Full-Recourse Promissory Note. Stockholder Notes also incorporates the First Amendment to Exercise Notice and Stock Purchase Agreement and such Settlement Agreements as OneName may have entered into with individuals at the time of their termination of employment. These notes, along with accrued interest, are due October 6, 2005.

**1.72    Stockholder Note Claims** means all of the Debtor's right, title and interest, related to the enforcement and collection of the Stockholder Notes.

**1.73    Subclass** means a subclass of any Class as designated in Article 3 of the Plan.

**1.74    Subscription** means a subscription to participate in the Convertible Financing pursuant to the Convertible Financing Offering.

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1    **1.75    Subscription Commitment Agreement** means the binding commitment to be

2    executed by Creditors or Interestholders pursuant to which such Creditors or Interestholders

3    commit to provide funds in exchange for the issuance of a Convertible Financing A-Note

4    pursuant to the Convertible Financing Offering, which commitment agreement shall be in

5    substantially the same form as the one to be contained in the Plan Supplement.

6    **1.76    Subscription Expiration Date** means the date 30 days after the Confirmation

7    Date.

8    **1.77    Tax Code** means the Internal Revenue Code of 1986, as amended.

9    **1.78    Term Sheet** means that term sheet for the company's secured convertible debt

10    offering dated September 3, 2003 and any subsequent amendment thereto.  A copy of the

11    Term Sheet is attached hereto as Exhibit B.

12    **1.79    Unimpaired** means, when used with reference to a Claim or Interest, a Claim

13    or Interest that is not impaired within the meaning of § 1124 of the Code.

14    **1.80    Unsecured Claim** means a Claim other than a Secured Claim, an

15    Administrative Expense Claim or a Priority Tax Claim.

16    **1.81    Interpretation.**  Any term not defined herein has the meaning ascribed to it in

17    the Code or the Bankruptcy Rules.  The exhibits attached to this Plan are incorporated into

18    and are part of this Plan as if fully set forth in this Plan.  The headings in this Plan are for

19    convenience of reference only and shall not limit or otherwise affect the provisions hereof.

20    The words "including" and "include" and other words of similar import shall be deemed to

21    be followed by the phrase "without limitation".

22
    **ARTICLE II - PROVISIONS FOR THE ALLOWANCE AND
23    PAYMENT OF UNCLASSIFIED CLAIMS, ADMINISTRATIVE
    EXPENSES AND PRIORITY TAX CLAIMS**
24    **2.**        Unclassified Claims, Administrative Claims and Priority Tax Claims are not

25    classified under the Plan and shall be treated as follows:

26

Page 10- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**2.1 Section 507(a)(1) Claims.** Administrative Claims are not classified and shall be treated as follows:

    **2.1.1 Administrative Expense Claims.** Each holder of an Allowed Administrative Expense Claim (including the DIP Financing Facility and cure costs on Assumed Contracts and Leases) shall be paid in respect of such Claim in Cash, in full, on the Effective Date, or, if such Claim has not been Allowed on or before the Effective Date, promptly after the allowance of the Claim by a Final Order or as otherwise due by agreement of the parties; provided, however, that such Claim may be satisfied on such other terms as may be agreed by the holder of such Claim and the Debtor. Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor shall be paid in accordance with the agreed terms between the parties. On the Effective Date, all of the obligations of the Debtor to the Postpetition Lenders under or in respect of the DIP Financing Facility and the DIP Financing Order shall be assumed in accordance with the terms of the fully and finally approved term sheet governing the DIP Financing Facility.

    **2.1.2 Bar Date for Requests For Payment of an Administrative Expense.** All requests for payment of an Administrative Expense Claim not covered by previous bar dates, except for Professionals' requests for compensation and post-petition extensions of trade credit for goods or services, taxes and quarterly U.S. Trustee fees, shall be filed with the Court no later than thirty (30) days after the Effective Date or be forever barred. Within five (5) days after the Effective Date, Debtor shall serve notice of such Administrative Expense bar date on all known parties asserting Administrative Expense Claims except for Professionals. A bar date for Professionals' requests for compensation shall be set in the Confirmation Order.

    **2.1.3 Deadline for Objections.** All objections to allowance of Administrative Expense Claims must be filed by any parties in interest within thirty

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

(30) days after the Administrative Expense Claim bar date. If no objection to the applicable Administrative Expense Claim is filed on or before that date, such Administrative Expense Claim shall be deemed Allowed as of that date.

**2.1.4 U.S. Trustee Fees.** Quarterly fees owed to the Office of the U.S. Trustee shall be paid when due in accordance with applicable law and the Debtor shall continue to file reports to show the calculation of such fee for its estate until the case is closed under Code § 350.

**2.2 Section 507(a)(8) Claims.** Priority Tax Claims are not classified and are treated as follows:

**2.2.1 Priority Tax Claims.** Any holder of an Allowed Priority Tax Claim shall receive at the Debtor's option (i) the amount of the Allowed Priority Tax Claim in one Cash payment on or immediately after the Effective Date or (ii) the amount of the Allowed Priority Tax Claim, with interest, in equal-annual Cash payments on each anniversary of the Effective Date, until the last anniversary of the Effective Date that precedes the sixth anniversary date of the date of assessment of the Allowed Priority Tax Claim. The first payment shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Allowed Priority Tax Claim becomes a Final Order. Such claim shall bear simple interest at the rate of 5.5% per annum from the Confirmation Date and shall not be discharged until paid in full. The claim may be pre-paid in whole or in part at any time before then in Cash at the sole option of Reorganized Debtor. A Priority Tax Claim that is a Contested Claim shall not receive any distribution on the Effective Date or thereafter unless and until such Claim becomes an Allowed Priority Tax Claim. Allowed Secured Claims for taxes will be satisfied first as non-classified Priority Tax Claims to the extent they qualify as Priority Tax Claims, but shall retain any collateral for such Claim until the Priority Tax Claim is paid in full. To the extent

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

that some or all of an Allowed Secured Claim for taxes does not qualify as a Priority Tax Claim, but is a valid Allowed Secured Claim, it will be classified in Subclass 2en.

In the event of default by the Debtor of any of the provisions of the Plan concerning an amount owed to a State Tax Agency, after thirty (30) days written notice of the default and failure of the Debtor to cure, the entire amount owed to the Tax agency shall be immediately due and owing and the Tax agency may proceed with any remedies otherwise available to and under State Law including but not limited to usual State Tax collection procedures.

## ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

3.      All Claims against the Debtor and all Interests in the Debtor, as defined in §§ 101(5), (16) and (17) of the Bankruptcy Code, are classified as set forth herein.  Except as provided in ¶ 3.2.5 below, a claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class or is Unclassified to the extent it qualifies within the definition of such different Class or as Unclassified.

**3.1 Class 1 – Allowed Prepetition Priority Debt.**  Class 1 consists of all Allowed Claims against the Debtor entitled to priority pursuant to §§ 507(a)(3) through (5) of the Bankruptcy Code.

**3.2 Class 2 – Allowed Secured Claims.**  Class 2 consists of Allowed Secured Claims against the Debtor.  There are 5 Subclasses of Class 2 Claims.  A list of the creditors in each Subclass is attached as Exhibit IV to the Disclosure Statement.

**3.2.1   Subclass 2a**:  The senior Allowed Secured Claim of Perkins Coie.

**3.2.2   Subclass 2b**:  The second tier Allowed Secured Claim of the Prepetition Secured Note Holders.

**3.2.3   Subclass 2c**:  The third tier Allowed Secured Claim of Perkins Coie and the Prepetition Secured Note Holders.

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1       **3.2.4   Subclass 2d**: The fourth tier Allowed Secured Claim of the Prepetition

2 Secured Note Holders.

3       **3.2.5   Subclass 2e**: The Allowed Secured Claim of any other creditor

4 holding a claim secured by assets of the estate, each of which are separately classified

5 in their own distinct sub-classes Class 2e-1 through 2e-n. To the extent that a Secured

6 Tax Claim is also a Priority Tax Claim, such Claim shall be paid as Priority Tax

7 Claims but the holder of such claim shall retain its lien on collateral in its existing

8 priority until paid in full. To the extent a Secured Tax Claim is not a Priority Tax

9 Claim, it shall be paid in the manner set forth in ¶ 5.2.5 below.

10 **3.3 Class 3 - Allowed General Unsecured Claims.** Class 3 consists of Allowed

11 Unsecured Claims against the Debtor, however arising, not entitled to priority and not

12 otherwise included in any other Class hereof, including, without limitation, claims based

13 upon the rejection of executory contracts or unexpired leases.

14       **3.4 Class 4 -  Allowed Interests.** All Allowed Interests in the Debtor. There are

15 seven Subclasses of Class 4 Interests.

16       **3.4.1   Subclass 4a.** All Allowed Interests in the Debtor held by the holders of

17 the Debtor's Series A Preferred Stock.

18       **3.4.2   Subclass 4b.** All Allowed Interests in the Debtor held by the holders

19 of the Debtor's Series B Preferred Stock.

20       **3.4.3   Subclass 4c.** All Allowed Interests in the Debtor held by the holders of

21 the Debtor's Series C Preferred Stock.

22       **3.4.4   Subclass 4d.** All Allowed Interests in the Debtor held by the holders

23 of the Debtor's Series D Preferred Stock.

24       **3.4.5   Subclass 4e.** All Allowed Interests in the Debtor held by the holders of

25 the Debtor's Series E Preferred Stock.

26

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**3.4.6 Subclass 4f.** All Allowed Interests in the Debtor held by the holders of the Debtor's common stock.

**3.4.7 Subclass 4g.** All Allowed Interests in the Debtor held by the holders of Option Rights.

### ARTICLE IV - IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS

**4.      Impaired Classes of Claims and Interests.** Classes 1, 2, 3, and 4 and applicable subclasses therein are Impaired under this Plan.

### ARTICLE V - PROVISIONS FOR TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**5.** The treatment of all Allowed Claims and Allowed Interests are specified as follows:

**5.1 Priority Claims:**

**5.1.1 Class 1 Claims.** Class 1 is Impaired. Each holder of a Class 1 Allowed Claim shall be paid the entire amount of such holder's Allowed Claim by the Reorganized Debtor on the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such claim becomes a Final Order. There shall be credited against any Class 1 Allowed Claim any Post Petition Date payments made to the holder of such Class 1 Allowed Claim.

**5.2 Secured Claims:** Class 2 Claims consist of all Allowed Secured Claims. Class 2 Claims are further divided into separate Subclasses 2a through 2e, the treatment of which is specified below.

**5.2.1 Subclass 2a.** Subclass 2a is Impaired.

The holder of the Subclass 2a Allowed Secured Claim, Perkins Coie, shall be paid $400,000 in cash on the Effective Date, in full and complete satisfaction of all of Perkins Coie's Allowed Claims, including, but not limited to, those

Page 15- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

claims in Subclass 2a and Subclass 2c. If, on the Effective Date, Chris

Kosmos has not contributed or caused to be contributed sufficient funds to pay

Perkins Coie $400,000, Chris Kosmos has agreed to provide and Perkins has

agreed to accept, in full satisfaction of its claims, a secured personal guaranty

(not to exceed $200,000 in original principal amount) from Chris Kosmos (in a

form acceptable to Perkins Coie) for the amount then due and owing but

unpaid under the Settlement Agreement and the Plan. The payment to Perkins

Coie on the Effective Date shall be at least $200,000. Satisfaction of the terms

of the Settlement Agreement resolve Perkins Coie's Subclass 2a and Subclass

2c Allowed Secured Claims. Upon satisfaction of the terms of the Settlement

Agreement, the Company releases all of its claims against Perkins Coie,

including the release of the Company's indemnification rights. Upon

satisfaction of the terms of the Settlement Agreement, Perkins Coie releases all

of its claims against the Company including the satisfaction of all pre-

confirmation fees and costs incurred by Perkins Coie, and all fees and costs

incurred during the bankruptcy process.

   **5.2.2 Subclass 2b.** Subclass 2b is Impaired. The Subclass 2b Allowed

Secured Claims shall be paid and satisfied in the manner set forth in ¶ 5.2.2.1 below,

unless the holder of a particular claim elects to receive the treatment specified in ¶

5.2.2.2 or ¶ 5.2.2.3 below.

   5.2.2.1.   The holder of the Subclass 2b Allowed Secured Claim shall

retain all its liens encumbering the property revested in the Reorganized

Debtor and the Reorganized Debtor shall pay the holder of such Secured

Claim an amount equal to (i) 36 monthly payments of interest only, then (ii)

36 monthly payments in the amount necessary to fully amortize the amount of

such holder's Secured Claim over a period of time fifteen years from the date

Page 16- PLAN OF REORGANIZATION Dated April 14, 2005

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Subclass 2b Allowed Secured Claim. The first payment, of interest only, shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order. Such claim shall bear simple interest at the rate of 5.5% per annum. Subject to the prepayment obligation contained in ¶ 7.3 below, a Subclass 2b Claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

5.2.2.2. If a holder of a Subclass 2b Allowed Secured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to the Class 2b Allowed Secured Claim and be paid in accordance with the terms of such Convertible Financing B-Note. The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan. The provisions of this ¶ 5.2.2.2 shall be void and of no further force or effect with respect to the holder of the Class 2b Allowed Secured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

5.2.2.3. In the event the holder of the Subclass 2b Allowed Secured Claim votes in favor of the Plan and timely executes and returns a Subscription Commitment Agreement then such holder shall receive a Convertible Financing A-Note in a face amount equal to One Hundred Percent (100%) of that portion of the Class 2b Allowed Secured Claim that equals the amount of the Subscription Commitment and to the extent such holder has also timely elected to receive a Convertible Financing B-Note, then such holder shall also receive a Convertible Financing B-Note for the balance, if any, of the Class 2b Allowed Secured Claim, and shall be paid in accordance with the

Page 17- PLAN OF REORGANIZATION Dated April 14, 2005

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

terms of such convertible financing notes. The execution and return of the

Subscription Commitment Agreement must be made on or before the

Subscription Expiration Date. The provisions of this ¶ 5.2.2.3 shall be void

and of no further force or effect with respect to the holder of the Class 2b

Allowed Secured Claim in the event such holder fails to vote in favor of the

Plan or to timely execute and return a Subscription Commitment Agreement.

    **5.2.3 Subclass 2c.** Subclass 2c is Impaired. The Subclass 2c Allowed

Secured Claims (except the Subclass 2c Allowed Secured Claim of Perkins Coie)

shall be paid and satisfied in the manner set forth in ¶ 5.2.3.1 below, unless the holder

of a particular claim elects to receive the treatment specified in ¶ 5.2.3.2 or ¶ 5.2.3.3

below; provided, however, that Perkins Coie's Subclass 2c Allowed Secured Claim

shall be satisfied pursuant to the provisions set forth in Subclass 2a above and none of

the provisions of ¶¶ 5.2.3.1, 5.2.3.2, or 5.2.3.3 shall apply to such claim.

    5.2.3.1.    The holder of the Subclass 2c Allowed Secured Claim shall

retain all its liens encumbering the property revested in the Reorganized

Debtor and the Reorganized Debtor shall pay the holder of such Secured

Claim an amount equal to (i) 36 monthly payments of interest only, then

(ii) 36 monthly payments in the amount necessary to fully amortize the amount

of such holder's Secured Claim over a period of time fifteen years from the

date of Confirmation, then (iii) a balloon payment equal to the entire

remaining amount due on the Subclass 2c Allowed Secured Claim. The first

payment, of interest only, shall commence 30 days following the later of (a)

the Effective Date or (b) the date upon which an order of the Court allowing

such holder's Secured Claim becomes a Final Order. Such claim shall bear

simple interest at the rate of 5.5% per annum. Subject to the prepayment

obligation contained in ¶ 7.3 below, a Subclass 2c Claim may be pre-paid in

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

whole or in part at any time in Cash at the sole option of the Reorganized
Debtor.

        5.2.3.2.    If a holder of a Subclass 2c Allowed Secured Claim votes in
favor of the Plan, it may elect to receive a Convertible Financing B-Note in a
face amount equal to the Class 2c Allowed Secured Claim and be paid in
accordance with the terms of such Convertible Financing B-Note. The
election must be made on or before the date fixed by the Court for filing
objections to the confirmation of this Plan. The provisions of this ¶ 5.2.3.2
shall be void and of no further force or effect with respect to the holder of the
Class 2c Allowed Secured Claim in the event such holder fails to timely elect
to receive the treatment specified herein.

        5.2.3.3.    In the event the holder of the Subclass 2c Allowed Secured
Claim votes in favor of the Plan and timely executes and returns a
Subscription Commitment Agreement then such holder shall receive a
Convertible Financing A-Note in a face amount equal to One Hundred Percent
(100%) of that portion of the Class 2c Allowed Secured Claim that equals the
amount of the Subscription Commitment and to the extent such holder has also
timely elected to receive a Convertible Financing B-Note, then such holder
shall also receive a Convertible Financing B-Note for the balance, if any of the
Class 2c Allowed Secured Claim, and shall be paid in accordance with the
terms of such convertible financing notes. The execution and return of the
Subscription Commitment Agreement must be made on or before the
Subscription Expiration Date. The provisions of this ¶ 5.2.3.3 shall be void
and of no further force or effect with respect to the holder of the Class 2c
Allowed Secured Claim in the event such holder fails to vote in favor of the
Plan or to timely execute and return a Subscription Commitment Agreement.

Page 19- PLAN OF REORGANIZATION Dated April 14, 2005

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**5.2.4    Subclass 2d.**  Subclass 2d is Impaired.  The Subclass 2d Allowed Secured Claims shall be paid and satisfied in the manner set forth in ¶ 5.2.4.1 below, unless the holder of a particular claim elects to receive the treatment specified in ¶ 5.2.4.2  or ¶ 5.2.4.3 below.

5.2.4.1.    The holder of the Subclass 2d Allowed Secured Claim shall retain all its liens encumbering the property revested in the Reorganized Debtor and the Reorganized Debtor shall pay the holder of such Secured Claim an amount equal to (i) 36 monthly payments of interest only, then (ii) 36 monthly payments in the amount necessary to fully amortize the amount of such holder's Secured Claim over a period of time fifteen years from the date of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Subclass 2d Allowed Secured Claim.  The first payment, of interest only, shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order.  Such claim shall bear simple interest at the rate of 5.5% per annum.  Subject to the prepayment obligation contained in ¶ 7.3 below, a Subclass 2d Claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

5.2.4.2.    If a holder of a Subclass 2d Allowed Secured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to the Class 2d Allowed Secured Claim and be paid in accordance with the terms of such Convertible Financing B-Note.  The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan.  The provisions of this ¶ 5.2.4.2 shall be void and of no further force or effect with respect to the holder of the

Page 20-  PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

Class 2d Allowed Secured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

5.2.4.3.    In the event the holder of the Subclass 2d Allowed Secured Claim votes in favor of the Plan and timely executes and returns a Subscription Commitment Agreement then such holder shall receive a Convertible Financing A-Note in a face amount equal to One Hundred Percent (100%) of that portion of the Class 2d Allowed Secured Claim that equals the amount of the Subscription Commitment and to the extent such holder has also timely elected to receive a Convertible Financing B-Note, then such holder shall also receive a Convertible Financing B-Note for the balance, if any of the Class 2d Allowed Secured Claim, and shall be paid in accordance with the terms of such convertible financing notes.  The execution and return of the Subscription Commitment Agreement must be made on or before the Subscription Expiration Date.  The provisions of this ¶ 5.2.4.3 shall be void and of no further force or effect with respect to the holder of the Class 2d Allowed Secured Claim in the event such holder fails to vote in favor of the Plan or to timely execute and return a Subscription Commitment Agreement.

**5.2.5  Subclass 2e.**  Subclass 2e is Impaired.  The Class 2e Claims consist of all Allowed Secured Claims, if any, held by Persons other than holders of Allowed Secured Claims in Subclass 2a through 2d under this Plan.  Subclass 2e Claims are further divided into separate classes 2e-1 through 2e-n.  The holder of any claim in Subclass 2e shall receive the treatment specified in ¶ 5.2.5.1, unless the holder of a particular claim elects to receive the treatment specified in ¶ 5.2.5.2 below.

5.2.5.1.    Following the identification of the holder of any Subclass 2e Allowed Secured Claim, the Reorganized Debtor may (A) elect to retain the collateral securing such claim and the holder of such 2e-n Allowed Secured

Page 21-  PLAN OF REORGANIZATION Dated April 14, 2005

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930