# ONENAME CORPORATION

# PART 1

# Plan of Reorganization Dated April 14, 2005[1]

---

[1]ONENAME CORP.;#03-22581
24 PAGES TO FOLLOW

Claim shall retain all its liens encumbering the property revested in the Reorganized Debtor and the Reorganized Debtor shall pay the holder of such Secured Claim an amount equal to (i) 36 monthly payments of interest only, then (ii) 36 monthly payments in the amount necessary to fully amortize the amount of such holder's Secured Claim over a period of time fifteen years from the date of Confirmation, then (iii) a balloon payment equal to the entire remaining amount due on the Subclass 2e-n Allowed Secured Claim, or (B) return the collateral to the holder of the Subclass 2e-n Allowed Secured Claim. In the event the Reorganized Debtor elects to retain the collateral, the first payment, of interest only, shall commence 30 days following the later of (a) the Effective Date or (b) the date upon which an order of the Court allowing such holder's Secured Claim becomes a Final Order. Such Claim shall bear simple interest at the rate of 5.5% per annum. Subject to the prepayment obligation contained in ¶ 7.3 below, a Subclass 2e-n Claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

5.2.5.2. If a holder of a Subclass 2e-n Allowed Secured Claim votes in favor of the Plan, it may elect to receive a Convertible Financing B-Note in a face amount equal to the Class 2e-n Allowed Secured Claim and be paid in accordance with the terms of such Convertible Financing B-Note. The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan. The provisions of this ¶ 5.2.5.2 shall be void and of no further force or effect with respect to any holder of a Class 2e-n Allowed Secured Claim in the event such holder fails to timely elect to receive the treatment specified herein.

**5.3 Unsecured Claims:** Class 3 Claims consist of all Allowed Unsecured Claims.

Page 22- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**5.3.1** Class 3 is Impaired. The holder of any Claim in Class 3 shall be paid and satisfied in the manner set forth in ¶ 5.3.1.2 below, unless the holder of a particular claim elects to receive the treatment specified in ¶ 5.3.1.1 below.

5.3.1.1. If a holder of a Class 3 Allowed Unsecured Claim votes in favor of the Plan, it may elect to receive a cash payment in full satisfaction of its claim. The Company will create a pool of funds in the amount of $340,000 for the payment of allowed unsecured creditors who properly elect to receive an immediate cash payment (the "Convenience Class Payment"). This pool of funds will be created with $140,000 from the Epok Transaction, $100,000 from Kosmos' new capital and $100,000 from the Company. Creditors with allowed unsecured claims of $35,000 or less shall be entitled to elect to receive a one time Convenience Class Payment equal to 60% of their allowed unsecured claim in full satisfaction of that claim. Class 3 creditors with allowed claims in excess of $35,000 may elect to reduce their allowed unsecured claim to $35,000 and receive a one time Convenience Class Payment equal to 60% of $35,000 in full satisfaction of their entire allowed unsecured claim. For example, a creditor with an Allowed Unsecured Claim of $10,000 who elects to receive the one time Convenience Class Payment would receive $6,000 in full satisfaction of the claim. A creditor with an allowed unsecured claim of $40,000 who elects to receive the Convenience Class Payment would have his $40,000 claim reduced to $35,000 and would receive a one time Convenience Class Payment of $21,000 (i.e. 60% of $35,000) in full satisfaction of his $40,000 allowed unsecured claim. No additional payment will be made to any creditor who receives a Convenience Class Payment. The election must be made on or before the date fixed by the Court for filing objections to the confirmation of this Plan. Unless waived by

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

the Reorganized Debtor, in the event that the total payments required to provide Convenience Class Payments to properly electing holders of Class 3 Claims exceeds $340,000, then the Reorganized Debtor shall determine, in its sole discretion, the identity of those creditors whose election shall be rejected, and those creditors shall be paid pursuant to the provisions of ¶ 5.3.1.2. The provisions of this ¶ 5.3.1.1 shall be void and of no further force or effect with respect to any holder of a Class 3 Allowed Unsecured Claim in the event such holder fails to vote in favor of the Plan or to timely elect to receive the treatment specified herein.

5.3.1.2.    Allowed Class 3 Claimants who do not properly elect to receive the Convenience Class Payment shall be paid by the Reorganized Debtor in full not later than 72 months after the Effective Date. Such claim shall bear simple interest per annum at the federal judgment rate on the Effective Date. Subject to the prepayment obligation contained in ¶ 7.3 below, any claim may be pre-paid in whole or in part at any time in Cash at the sole option of the Reorganized Debtor.

5.3.1.3.    Notwithstanding the foregoing provisions, in the event the holder of an unsecured exchange note elects to participate in the Convertible Financing Offering in accordance with the provisions of the Plan and exercises such holder's modified drag forward rights with respect to such unsecured exchange note, then such holder shall not be entitled to receive any distribution under the provisions of ¶ 5.3.1.1 or 5.3.1.2 above, but shall be limited to the consideration issued in connection with the participation in the Convertible Financing Offering.

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1    **5.4 Interests.** Class 4 Interests consists of all Allowed Interests in the Debtor. Class

2    4 Interests are further divided into separate Subclasses 4a through 4g, the treatment of which

3    is specified below.

4    **5.4.1  Subclass 4a.** The holders of Subclass 4a Allowed Interests will receive

5    0.06273414 shares of New Common Stock for each share of Series A Preferred Stock

6    held by the holder of such shares and such holder's Pro Rata share of 7.315% of any

7    Remaining Net Recovery which percent has been calculated without regard to anti-

8    dilution and liquidation preferences.

9    **5.4.2  Subclass 4b.** The holders of Subclass 4b Allowed Interests will

10   receive 0.0714726 shares of New Common Stock for each share of Series B Preferred

11   Stock held by the holder of such shares and such holder's Pro Rata share of 1.680%

12   of any Remaining Net Recovery which percent has been calculated without regard to

13   anti-dilution and liquidation preferences.

14   **5.4.3  Subclass 4c.** The holders of Subclass 4c Allowed Interests will receive

15   0.074952825 shares of New Common Stock for each share of Series C Preferred

16   Stock held by the holder of such shares and such holder's Pro Rata share of 1.155%

17   of any Remaining Net Recovery which percent has been calculated without regard to

18   anti-dilution and liquidation preferences.

19   **5.4.4  Subclass 4d.** The holders of Subclass 4d Allowed Interests will

20   receive 0.074952675 shares of New Common Stock for each share of Series D

21   Preferred Stock held by the holder of such shares and such holder's Pro Rata share of

22   8.155% of any Remaining Net Recovery which percent has been calculated without

23   regard to anti-dilution and liquidation preferences.

24   **5.4.5  Subclass 4e.** The holders of Subclass 4e Allowed Interests will receive

25   0.037613086 shares of New Common Stock for each share of Series E Preferred

26   Stock held by the holder of such shares and such holder's Pro Rata share of 13.510%

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

of any Remaining Net Recovery which percent has been calculated without regard to anti-dilution and liquidation preferences.

**5.4.6 Subclass 4f.** The holders of Subclass 4f Allowed Interests will receive 0.016597838 shares of New Common Stock for each share of common stock held by the holder of such shares and such holder's Pro Rata share of 3.185% of any Remaining Net Recovery; which percent has been calculated without regard to anti-dilution and liquidation preferences; provided, however that all common stock issued in exchange for the Stockholder Notes shall be surrendered and exchanged by all holders of such common stock pursuant to the terms of the Settlement Agreement and Release and such holders shall receive nothing on account of such stock.

**5.4.7 Subclass 4g.** The holders of Subclass 4g Allowed Interests may exercise their Option Rights to purchase shares of stock in the Debtor at any time prior to the Effective Date and will thereupon be deemed holders of Allowed Interests in the applicable Subclass and be entitled to receive shares of New Common Stock as provided under the applicable provision of ¶¶ 5.4.1 through 5.4.6 above. The exercise price shall be paid to the Reorganized Debtor on or before the Effective Date. In the event the holder of any Option Rights fails to exercise such Option Rights prior to the Effective Date, then such Option Rights shall be extinguished.

## ARTICLE VI - TREATMENT OF DISPUTED CLAIMS AND INTEREST

**6.** Disputed Claims and Interests shall be treated in the manner set forth below.

**6.1** In calculating the cash to be distributed to Allowed Claims, all Disputed Claims will be treated as if they were Allowed Claims in the full amount thereof; provided, however, that the cash so allocated to Disputed Claims will not be distributed, but will be held in trust by the Reorganized Debtor for the benefit of the holders of Allowed Claims ultimately entitled thereto.

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**6.2** At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall deliver to the holder of the Allowed Claim the cash allocable to such Allowed Claim.

## ARTICLE VII - MEANS FOR IMPLEMENTATION OF THE PLAN

**7.**     The Debtor, Debtor in Possession, and Reorganized Debtor shall perform or shall have performed all acts required of it.

**7.1** Except as provided in this Plan, in accordance with 11 U.S.C. § 1141, on Confirmation all assets of the Estate shall be revested in the Reorganized Debtor. The Reorganized Debtor shall make the payments required by the Plan, shall assume the liabilities with respect to assumed contracts and claims as required under the Plan, shall satisfy all Administrative Expense Claims, and shall make all other payments required after the Effective Date.

**7.2** Except as provided in ¶ 7.4 below and in the OneName Liquidation Trust, all rights, claims and causes of action, whether equitable or legal, of the Estate, the Debtor, Debtor in Possession, and Reorganized Debtor against all persons are reserved for the Debtor, Debtor in Possession, and Reorganized Debtor. Following confirmation the Reorganized Debtor may commence adversary proceedings against persons or entities to realize upon causes of action retained under the Plan. If the Reorganized Debtor prosecutes or, where appropriate, settles and compromises, any action transferred to it, then the net proceeds of such action shall be retained by the Reorganized Debtor for use in the ordinary course.

**7.3** In the event the Reorganized Debtor prosecutes the Patent Litigation, then the net proceeds from such action shall be used to prepay any remaining obligations to the holders of Secured claims and Unsecured Claims to the extent the holders of such claims are entitled to payments under the provisions of ¶ 5.2.2.1, ¶ 5.2.3.1, ¶ 5.2.4.1, ¶ 5.2.5.1, or ¶ 5.3.1.2. Any pre-payments to the holders of Claims shall be made in the following order, Subclass 2b,

Page 27- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

Subclass 2c, Subclass 2d, Subclass 2e-n, Class 3. For the purpose of this ¶ 7.3, Net Proceeds shall mean the proceeds from any recovery less all tax obligations, attorneys fees, costs and reimbursements due to the Debtor's insurer on account of any recovery.

      **7.3.1**   After payment of the obligations set forth in ¶ 7.3 above, thirty-five percent of the Remaining Net Recovery shall be distributed in accordance with the provisions of ¶5.4.1, ¶5.4.2, ¶5.4.3, ¶5.4.4, ¶ 5.4.5 and ¶5.4.6. Forty percent of the Remaining Net Recovery will be distributed Pro Rata to the holders of New Common Stock and New Preferred Stock based on a record date fixed by the Board of Directors that is a date not less than 45 days after written notice of said distribution to the holders of Convertible Financing A Notes and Convertible Financing B Notes. Twenty-five percent of the Remaining Net Recovery may either be expended by the Reorganized Debtor or may be distributed to the holders of New Common Stock and New Preferred Stock in accordance with the notice requirements set forth above. The decision to make a distribution of part or all of this twenty-five percent of the Remaining Net recovery shall be at the sole discretion of the Board of directors of the Company.

      **7.3.2**   OneName or the Reorganized OneName shall undertake to have a meeting called of the members of Extensible, LLC. The meeting shall be for the purpose of electing a managing Board, if necessary and to vote on the compromise of Extensible's alleged claims against the Company and others (including but not limited to current and former officers and directors of the Company, XNS.ORG and its successors) and the winding up of Extensible. Peter Heymann,David Arnold, and current members of management of Reorganized OneName and its current Board of Directors (to the extent that they are putative owners of interests in Extensible),shall actively participate in the Extensible meetings and vote in favor of the compromise of Extensible's alleged claims. The fees and costs incurred by the Company in this

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

effort shall be deemed expenses payable prior to the payment of any Net Remaining Recovery or the payment of Net Royalties under the Plan. At the meeting, members who own more than fifty percent (50%) of the outstanding units of Extensible must vote in favor of the compromise and authorize the Extensible Board to execute settlement documents resolving all claims against the Company and others for the additional consideration provided in ¶ 7.3.3 below. The final settlement documents shall be in a form acceptable to the holders of a majority of the interests in Extensible upon terms substantially similar to those set forth in this Article 7.3._ If the members who own more than fifty percent (50%) of the units of Extensible do not approve the compromise of claims, then this resolution is void and Peter Heymann,David Arnold, the other putative members of Extensible, and Extensible shall retain their right to make claims against OneName and others and OneName shall retain all of its rights and defenses to any such claims.

      **7.3.3**   Provided all of the conditions set forth in ¶ 7.3.2 have been satisfied, the Reorganized OneName, in addition to the existing consideration to be paid to the holders of pre-petition shares of stock in the Company, as provided in ¶ 7.3.1, shall pay to the holders of pre-petition shares in Class 4a, 4b, 4c, 4d and 4f an additional five percent (5%) of the Net Remaining Recovery(allocated on a pro-rata basis as currently set forth in the Plan) from the Patent Litigation and from Net Remaining Recovery from any other targets sued for violation of the Company's pre-confirmation patents. The additional five percent (5%) shall be allocated from the twenty-five percent (25%) Remaining Net Recovery currently reserved by the Company under the Plan. In addition, the holders of pre-petition shares in Class 4a, 4b, 4c, 4d, 4e and 4f shall also receive six percent (6%) of the Net Royalties resulting from the Patent Litigation or Net Royalties paid by other companies who obtain a license of the Company's pre-petition patents. For the purpose of this ¶ 7.3, Net

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

Royalties shall mean the royalty payments received by the Reorganized OneName from any license of the Company's pre-petition patents less the Company's reasonable costs incurred in providing the license, including but not limited to its expenses, attorneys' fees and costs, tax obligations, and reimbursements due to the Company's insurer on account of any such license. No royalty shall be payable on account of the Company's registry business.

**7.4** All rights, claims and causes of action, whether equitable or legal, of the Estate, the Debtor, Debtor in Possession, and Reorganized Debtor against all persons arising under Chapter 5 of the Bankruptcy Code, under State or Federal law for the positive recovery of avoidable fraudulent conveyances or other preferential transfers (Chapter 5 Claims) are reserved for the Reorganized Debtor. The Reorganized Debtor shall administer the prosecution of the Chapter 5 Claims. The net proceeds of such actions shall be distributed Pro Rata to the holders of Allowed Class 3 Claims who did not receive a Convenience Class Payment. An identification of the possible defendants who may be pursued for such claims is set forth on Exhibit A to this Plan, which is incorporated herein by reference. .

**7.5** Except as otherwise provided in this Plan, the Reorganized Debtor shall resolve the claims of all creditors and interestholders.

**7.6** Any objection to a claim by a party in interest in the Reorganization Case must be filed on or before sixty (60) days following the Confirmation Date unless said time period is extended by the Bankruptcy Court for cause shown; provided, however, that the foregoing limitation does not apply to any claims filed subsequent to Confirmation.

**7.7** Pursuant to § 347(b) of the Bankruptcy Code, ninety (90) days after any distribution by the Reorganized Debtor or the Disbursing Agent provided for herein, the Reorganized Debtor or the Disbursing Agent, as the case may be, shall stop payment on any such check remaining unpaid to a holder of an Allowed Claim and funds shall be returned to the payor for use or redistribution in accordance with the provisions of this Plan. From and

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

after the date the Reorganized Debtor stops payment on any distribution check pursuant to this ¶ 7.7, the holder of the claim on account of which such check was issued shall be entitled to receive no further distributions on account of his claim and such holder's Allowed Claim shall thereupon be deemed satisfied in full. The State of Washington shall be exempt from this provision.

**7.8** The deadline for submission of all claims entitled to priority pursuant to §§ 507(a)(1), (a)(2) and (b) of the Bankruptcy Code incurred prior to Confirmation, shall be the date specified in ¶ 2.1.2. Failure to file a claim by this date shall conclusively bar the claimant from asserting its Claim, which Claim shall be forever barred from sharing in the distributions under the Plan.

**7.9** The Debtor shall close the Convertible Financing pursuant to the terms of the Term Sheet attached hereto as Exhibit B.

**7.10** The record date for purposes of distributions under this Plan shall be the close of business on the Confirmation Date. The Debtor will rely on the register of proofs of claim filed in the Case and its stock records to identify holders of Claims and Interests except to the extent a notice of transfer of Claim or Interest has been filed with the Court prior to the Confirmation Date pursuant to Bankruptcy Rule 3001 or the Debtor has actual notice of a permitted post-confirmation transfer. Each holder of any Interest entitled to receive distributions on account of such interest shall surrender such holder's share certificates to the Reorganized Debtor as a condition of participation in distributions. Pursuant to the provisions of 11 U.S.C. § 1143, if any holder of an Interest fails to present such holder's security before five years after the Confirmation Date, then such holder may not participate in the distribution under the Plan.

**7.11** On and after the Effective Date, the Reorganized Debtor shall continue to operate its business. All assets of the Debtor shall vest in the Reorganized Debtor on the Effective Date unless previously liquidated or sold.

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1     **7.12** On or before the Effective Date, the Reorganized Debtor's corporate articles of

2 incorporation and by-laws shall be amended and restated to prohibit the issuance of non-

3 voting equity security to the extent required by Code § 1123(a)(6) and such other

4 modifications as may be approved in the Confirmation Order ("Restated Articles of

5 Incorporation" and "Restated By-Laws"). A form of Restated Articles of Incorporation and

6 Restated By-Laws shall be filed as part of the Plan Supplement. Such documents will

7 provide for a ratification and confirmation of indemnification rights of directors and officers

8 of the Debtor and affiliates who served post-petition and payment of premiums for

9 reasonable director and officer insurance for such parties.

10     **7.13** The board of directors of Reorganized Debtor shall be reconstituted on the

11 Effective Date in a manner consistent with the Restated Articles of Incorporation and shall be

12 initially composed of individuals to be proposed at least 10 days prior to the Confirmation

13 Hearing and set forth in the Confirmation Order.

14     **7.14** Except as otherwise expressly provided in the Plan, Restated Articles of

15 Incorporation, Restated By-Laws or Confirmation Order, confirmation of the Plan shall

16 operate pursuant to Section 1141(d)(1) of the Code as a discharge, effective as of the close of

17 the Effective Date, of any and all debts and liabilities of, and any Claims or Liens against and

18 Interests in, the Debtor or any of its assets that existed or arose at any time before

19 Confirmation. On and after the Effective Date, as to every discharged debt, liability, Claim,

20 Interest or Lien, the Creditor or other holder that held such debt, liability, Claim, Interest or

21 Lien shall be precluded and enjoined from asserting or pursuing against (i) the Debtor, (ii)

22 the Debtor's assets or properties, (iii) the Reorganized Debtor or (iv) the Reorganized

23 Debtor's assets or properties, the Claim, Lien or Interest, or any other or further Claim based

24 on any document, instrument, act or omission, transaction or other activity of any kind or

25 nature that occurred before the Confirmation Date.

26

Page 32- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1      **7.15**    Except for willful misconduct or bad faith, neither the Debtor nor the directors,

2  officers, agents, Affiliates, Associates and Professionals of the Debtor (collectively, the

3  "Company-Related Parties") or the Committee nor its members, agents, Affiliates,

4  Associates and Professionals (collectively, the "Committee-Related Parties"), and all of the

5  foregoing in any capacity whatsoever, shall be liable to any person or entity for any post-

6  petition action, failure or omission to act or other matter related to the Debtor and/or the

7  Case, up to the Confirmation Date. All parties are permanently enjoined from initiating a

8  suit against the Reorganized Debtor, the Debtor, the Company-Related Parties, the

9  Committee, and the Committee-Related Parties, except for willful misconduct or bad faith on

10  the part of any such parties.

11      **7.16**    A Management and Employee Incentive Plan shall be filed as part of the Plan

12  Supplement and approved as part of the Confirmation Order. The Management and

13  Employee Incentive Plan shall include the Employee Profit Sharing Plan, the Stock Incentive

14  Plan, the Plan for the Outside Board of Directors and the Executive Compensation Plan.

15      **7.17**    On the Effective Date, all of the Debtor's, the Reorganized Debtor's and the

16  Estate's claims under the Kosmos Notes, the Stockholder Notes, including, but not limited to

17  the Kosmos Note Claims and the Stockholder Note Claims shall be compromised and

18  released in accordance with the provisions of the Settlement Agreement and Release;

19  provided, however, that any Kosmos Notes, Kosmos Note Claims, Stockholder Notes and/or

20  Stockholder Note Claims against any Releasing Party who has not timely executed the

21  Settlement Agreement and Release shall be transferred to the OneName Liquidation Trust

22  and proceeds from the prosecution of such claim shall be distributed in accordance with the

23  provisions of the OneName Liquidation Trust..

24      **7.18**    In the event there is any transfer of any of the Kosmos Notes, the Stockholder

25  Notes, the Kosmos Note Claims and/or the Stockholder Note Claims to the OneName

26

Page 33- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1  Liquidation Trust, the Allowed Secured Trust Creditors shall retain all of their liens

2  encumbering those assets.

3  **7.19** As set forth in the Settlement Agreement and Release, the Releasing Parties

4  and the Company are completing the agreement based on their understanding that the

5  settlement does not create any tax payable by the Releasing Parties, the Debtor, the

6  Reorganized Debtor or the Estate under the provisions of the Internal Revenue Code or any

7  state taxation statute. The Confirmation of this Plan shall constitute an adjudication,

8  pursuant to the provisions of 11 U.S.C. § 505 that the Debtor, the Reorganized Debtor and

9  the Estate, and any of their officers, directors or agents are not liable, in any capacity, for any

10  tax on account of the transactions set forth in the Settlement Agreement and Release,

11  including but not limited to any employment taxes, any withholding, any FICA, any FUTA

12  or any other taxes payable to the United States.

13  **7.20** As set forth in the Plan and the Settlement Agreement and Release, in the

14  event the holder of a Claim based on an unsecured bridge note votes in favor of the Plan and

15  timely executes and returns a Subscription Commitment Agreement then such holder shall

16  receive a Convertible Financing A-Note in a face amount equal to Seventy Percent (70%) of

17  that portion of such holder's Claim that equals the amount of the Subscription Commitment

18  in full and complete satisfaction of the portion of such holder's Claim equal to the amount of

19  the Subscription Commitment, and the balance, if any, of such holder's Claim shall be paid

20  in accordance with the otherwise applicable terms of this Plan. The execution and return of

21  the Subscription Commitment Agreement must be made on or before the Subscription

22  Expiration Date. The provisions of this ¶ 7.20 shall be void and of no further force or effect

23  with respect to the holder of a Claim based on an unsecured bridge note in the event such

24  holder fails to vote in favor of the Plan or to timely execute and return a Subscription

25  Commitment Agreement.

26

Page 34- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1     **7.21**    In the event one or more of any of the Kosmos Notes, the Stockholder Notes,

2    the Kosmos Note Claims and/or the Stockholder Note Claims to the OneName Liquidation

3    Trust are to be transferred to the OneName Liquidation Trust pursuant to the provisions of

4    ¶ 7.17, then the OneName Litigation Trust shall be established pursuant to the OneName

5    Liquidation Trust Agreement attached to this Plan as Exhibit F. The OneName Liquidation

6    Trust Advisory Board shall be constituted by a representative of the unsecured creditors, a

7    representative of the Secured Trust Creditors and a representative of the Debtor and each

8    shall have one vote in managing the OneName Liquidation Trust. The initial members of the

9    Trust Advisory Board shall be designated by an order entered by the Court on or before ten

10   days after the Effective Date. The Liquidation Trust Advisory Board shall select the Trustee

11   by unanimous vote. The OneName Liquidation Trust Advisory Board must by unanimous

12   vote also approve the selection of litigation counsel and other professionals for the OneName

13   Liquidation Trust. Only expenses and fees of professionals hired by the OneName

14   Liquidation Trust will be paid from OneName Liquidation Trust recoveries, not the fees and

15   expenses of the OneName Liquidation Trust beneficiaries. Fees and expenses of the

16   OneName Liquidation Trust shall be paid by loans from the Reorganized Debtor (which shall

17   be repaid prior to any distribution to any beneficiary).

18     **7.22**    As set forth in the Epok Transaction, the Company and Epok have agreed to

19   the assignment of certain software programs by OneName to Epok or a designee of Epok, as

20   approved by OneName, for the total sum of $140,000.

21               **ARTICLE VIII - THE CONVERTIBLE FINANCING OFFERING**

22     **8.**    In addition to the distributions of New Common Stock to the holders of

23   Claims and Interests as set forth above, the following provisions apply to the issuance of

24   Convertible Financing A-Notes in connection with the Convertible Financing Offering.

25     **8.1** Pursuant to the terms and conditions set forth in the Term Sheet, (a) the

26   Reorganized Debtor will issue to the DIP Lenders, and the DIP Lenders have agreed to

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

accept Convertible Financing A-Notes in the aggregate principal amount of the subscriptions. The Convertible Financing A-Notes shall be substantially in the form attached hereto as Exhibit C and shall be convertible into shares of New Preferred Stock in accordance with the Term Sheet.

**8.2** The Debtor will cause a Subscription Commitment Agreement and other offering materials to be delivered to each holder of a Subclass 2b, Subclass 2c, and Subclass 2d Allowed Secured Claim , offering each such holder the right, pursuant to and on the terms and conditions of the Reorganized Debtor's Convertible Financing Offering, to make an advance to the Reorganized Debtor in exchange for the issuance of a Convertible Financing A-Note.

**8.3** The Reorganized Debtor Convertible Financing Offering shall expire on the Subscription Expiration Date. After the Subscription Expiration Date, no additional Subscription Commitment Agreements will be accepted without the written consent of the DIP Lenders, and the Reorganized Debtor shall not be obligated to honor any purported Subscription Commitment Agreements received after such expiration, regardless of when the documents relating to such Subscription Commitment Agreements were sent.

**8.4** On or before the Subscription Expiration Date, the funds being advanced pursuant to any Subscription Commitment Agreement shall, pursuant to the provisions of ¶ 8.7 below, be paid by each participant timely executing and returning a Subscription Commitment Agreement and such funds shall be held in escrow, pending the final closing of the Convertible Financing Offering provided herein.

**8.5** On the Convertible Financing Closing Date, the Reorganized Debtor shall issue a Convertible Financing A-Note to each subscribing participant, in exchange for all funds advanced.

**8.6** The subscription rights provided herein are not transferable; provided, however, that the right to drag forward prior debt amounts, including partial drag forward rights with

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

respect to unsecured bridge notes, shall be transferable according to the Term Sheet and the Settlement Agreement and Release. Accordingly, any purported transfer shall be null and void and of no effect. Any subscribing participant that breaches its obligations to subscribe for and make payment on the account of the Convertible Financing A-Note pursuant to a Subscription Commitment Agreement that has been accepted by the Reorganized Debtor shall forfeit (i) as liquidated damages the funds delivered pursuant to Section 8.7 and (ii) its entire entitlement to receive a Convertible Financing A-Note pursuant to its Subscription Commitment Agreement.

**8.7** Any subscribing participant shall make its subscription commitment by causing its Subscription Commitment Agreement to be executed and delivered to the Reorganized Debtor on or prior to the Subscription Expiration Date and shall tender the Committed Funds Deposit (as defined in this paragraph) in accordance with the procedures set forth herein and in the Subscription Commitment Agreement. In order for any Subscription Commitment Agreement to be effective, a subscribing participant shall tender as a deposit the amount of cash that would be necessary to obtain the issuance of a Convertible Financing A-Note subscribed for pursuant to such holder's Subscription Commitment Agreement (the "Committed Funds Deposit"). All questions concerning the timelines, viability, form and eligibility of any Subscription Commitment Agreements shall be determined by the Debtor in its reasonable discretion (and with the consent of the DIP Lenders), whose determination shall be final and binding. The Debtor, in its reasonable discretion (and with the consent of the DIP Lenders), may, but shall not be obligated to, waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as they may determine, or reject one or more purported Subscription Commitment Agreements. Subscription Commitment Agreement defects shall be deemed to have been waived or cured within such time as the Debtor shall determine, in its reasonable discretion (and with the consent of the DIP Lenders). The Debtor shall be under no duty to give notification of any defect or

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

irregularity in connection with the submission of Subscription Commitment Agreements or incur any liability for failure to give such notification.

**8.8** Within ten (10) Business Days after the Subscription Expiration Date, the Debtor shall notify the DIP Lenders of the aggregate amount of Convertible Financing A-Notes subscribed for by particpants.

**8.9** Each participant entering into a Subscription Commitment Agreement shall consent to the exclusive jurisdiction and venue of the Bankruptcy Court for the resolution of any dispute arising thereunder, including, without limitation, in respect of payment of the Committed Funds Deposit and in respect of the terms of the Convertible Financing Offering set forth in the Plan.

## ARTICLE IX - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.** The Plan shall be deemed to constitute and incorporate a motion by the Debtor to reject all executory contracts and unexpired leases to which the Debtor is a party or is otherwise bound, except for the contracts and leases that (a) have been assumed, assumed and assigned, consensually terminated or rejected pursuant to an order of the Court entered prior to the Effective Date, (b) are specifically treated otherwise in this Plan, or (c) are the subject of a motion to assume or assume and assign that is pending before the Court on the Effective Date. The Confirmation Order shall represent and reflect an order of the Court approving the assumptions and rejections as of the Confirmation Date, unless otherwise provided in this Article 9. Any cure costs that Reorganized Debtor is required to pay by a Final Order in connection with an assumed contract or lease shall be treated as an administrative expense of the Case.

**9.1** If the rejection of an executory contract or unexpired lease by the Debtor pursuant to Article 9 of the Plan results in damages to the counterparty to such contract or lease, then a Claim for damages or any other amounts related in any way to such contract or lease shall be

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

forever barred and shall not be enforceable against the Debtor, its successors and assigns or its property, unless a proof of claim is filed with the Court within thirty (30) days of the Confirmation Date. The rejection claim bar date for leases and contracts rejected prior to Confirmation shall be the date set forth in the applicable order rejecting such lease or contract.

**9.2** Entry of the Confirmation Order shall constitute the assumption of the Assumed Contracts and Leases as of the Effective Date. The list of Assumed Contracts and Leases is attached hereto as Exhibit E.

**9.3** If there are unresolved disputes (including with respect to cure amounts) as to any proposed Assumed Contracts and Leases, the Confirmation Order may provide a mechanism by which the Reorganized Debtor may elect to reject such contract or lease after the Effective Date if such dispute is not resolved to the satisfaction of the Reorganized Debtor; provided, however, that such contract or lease shall not be deemed assumed or rejected until such dispute has been resolved by a Final Order.

## ARTICLE X - MODIFICATIONS OF THE PLAN

**10.** Pursuant to the provisions of § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior or subsequent to Confirmation.

## ARTICLE XI - RETENTION OF JURISDICTION

**11.** Notwithstanding Confirmation, until entry of the Closing Order, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

**11.1** to determine the classification of the Claims of any Creditor or Interests of any Interestholder and the determination of such objections as may be filed with respect to the

Page 39- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

Claims and Interests, including proceedings for estimation of Claims or Interests pursuant to Code §502(c);

**11.2** to determine all questions and disputes regarding title to the assets of the Debtor, all controversies, disputes or conflicts, whether or not subject to any pending action as of the Effective Date, between the Debtor or Reorganized Debtor and any other party;

**11.3** to modify the Plan with the consent of the Reorganized Debtor after the Effective Date but prior to substantial consummation of the Plan;

**11.4** to construe, interpret, implement and enforce the terms and conditions of the Plan, Confirmation Order, the Term Sheet and other related documents;

**11.5** to determine issues and disputes concerning entitlement to distributions to be made under and pursuant to this Plan;

**11.6** to enter such orders, including, but not limited to, such future injunctions as are necessary to enforce the respective title, rights and powers of the Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary;

**11.7** to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to implement the purposes and intent of the Plan;

**11.8** to determine any and all objections to the allowance of Claims or Interests, including, without limitation, any counterclaims and rights of setoff,

**11.9** to determine any and all applications for allowance of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Code or the Plan;

**11.10** to determine any and all applications or motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease, and to hear and determine, and, if need be, to liquidate any and all Claims arising therefrom;

Page 40- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**11.11** to determine any and all applications, adversary proceedings and contested matters, including any adversary proceeding concerning any Cause of Action, that may be pending on or initiated after the Effective Date relating to matters that arose prior to the Effective Date;

**11.12** to consider any technical or immaterial modification of the Plan, whether or not the Plan has been substantially consummated, to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order or any other order of the Court, to the extent authorized by the Plan or the Code and requiring Court approval;

**11.13** to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, any agreements or instruments issued under or relating to this Plan or any other documentation evidencing the terms of this Plan;

**11.14** to consider and act on the compromise and settlement of any Claim against or Cause of Action by or against the Debtor or Reorganized Debtor arising under or in connection with the Plan;

**11.15** to issue such orders in aid of execution of the Plan as may be authorized by Code § 1142;

**11.16** to hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court;

**11.17** to liquidate damages in connection with any disputed, contingent or unliquidated Claims or Interests, and expressly including claims and causes of action transferred to the OneName Liquidation Trust pursuant to the terms of the Plan;

**11.18** to adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof and for adequate protection claimed by any holder of such Claims;

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1     **11.19**  to adjudicate all claims or controversies arising out of any purchases, sales or

2 contracts made or undertaken by the Debtor during the pendency of the Case; and

3     **11.20**  to determine such other matters or proceedings as may be provided for under

4 Title 28 or other title of the United States Code, the Code, the Bankruptcy Rules, other

5 applicable law, the Plan or in any order or orders of the Court, including, but not limited to,

6 the Confirmation Order or any order which may arise in connection with the Plan or the

7 Confirmation Order.

8                **ARTICLE XII - MISCELLANEOUS PROVISIONS**

9     **12.**    The following Miscellaneous Provisions apply.

10     **12.1**    In the event this Plan is not confirmed under Code § 1129(a), the Debtor

11 requests that this Plan be confirmed under Code § 1129(b) with respect to any class of

12 Creditors or Interestholders which do not vote to accept the Plan.

13     **12.2**    On the Effective Date, any and all of the Causes of Action shall vest in the

14 Reorganized Debtor.

15     **12.3**    The Committee shall be dissolved on the Effective Date, but shall elect a

16 representative to serve on the OneName Liquidation Trust Advisory Board on behalf of

17 Allowed Class 3 Claimants.

18     **12.4**    On the Effective Date, all writings evidencing indebtedness of the Debtor shall

19 be deemed to be canceled as against the Debtor, and the holders of those writings shall have

20 no further rights against the Debtor under the writings, except as they may have as the holder

21 of an Allowed Claim or as otherwise provided in this Plan or documents executed in

22 connection with this Plan.

23     **12.5**    Should any provision in this Plan be determined to be unenforceable, such

24 determination shall in no way limit or affect the enforceability and operative effect of any

25 and all other provisions of this Plan.

26

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**12.6**   Except to the extent that the Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Washington, without giving effect to choice of law principles.

**12.7**   The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

**12.8**   Except as otherwise provided in this Plan, the Debtor may, but shall not be required to, set off or counterclaim against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of the Claim, claims of any nature whatsoever the estate may have against the holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any claim that the estate may have against the holder; provided, however, that the Debtor will not seek to set off or counterclaim for any obligation that is not yet due.  Setoffs or counterclaims arising from events after the Petition Date shall reduce the payouts under any Allowed Claim dollar for dollar.  Setoffs or counterclaims arising from pre-petition events shall only reduce the amount of the Allowed Claim and therefore, shall only reduce the payout amount proportionally with the reduction in the Allowed Claim.  If any counterclaim or setoff asserted by the Debtor exceeds the amount of any Claim, the holder of such Claim shall not be entitled to any distribution under the Plan, and the Debtor will reserve the right to recover any such excess counterclaim or setoff from the holder of the applicable Claim.

**12.9**   Unless this Plan is revoked and withdrawn, the provisions of this Plan shall bind all Creditors and Interestholders, whether or not they vote to accept the Plan.

**12.10**  Except as expressly provided in this Plan and the documents executed in connection with this Plan, the Confirmation Order shall contain an injunction, embodying the protections of the automatic stay of Code §362(a), against the prosecution against the Debtor of any Claim or Interest, whether or not a proof of claim or proof of Interest based on any such debt, liability, or Interest is filed under Code § 502, including the pursuit of any

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

Creditor's or Interestholder's derivative actions against any third party derived from the rights and interests of the Debtor or the Debtor's estate.

**12.11** Forms of certain key documents necessary or appropriate to implement the terms of this Plan may be filed with the Court as one or more Plan Supplements prior to the Confirmation Date.

## ARTICLE XIII - CONDITIONS TO THE EFFECTIVENESS OF THE PLAN

**13.** All of the following conditions must occur and be satisfied for this Plan to be effective:

**13.1** The Confirmation Order must be signed by the judge of the Court and duly entered on the docket for the Case by the clerk of the Court.

**13.2** There must be no stay in effect with respect to the Confirmation Order.

**13.3** The transactions contemplated by the Term Sheet shall have occurred.

**13.4** All of the closing conditions set forth in the Term Sheet shall have been satisfied or have been waived.

**13.5** The Confirmation Order shall approve the Settlement Agreement and Release related to the Kosmos Notes, Kosmos Note Claims, the Stockholder Notes and the Stockholder Note Claims.

**13.6** The Confirmation Order shall expressly include the determination regarding the tax effect of the transactions set forth in the Settlement Agreement and Release as required under the provisions of ¶ 7.19 above.

**13.7** The Confirmation Order shall approve the Epok Transaction.

Page 44- PLAN OF REORGANIZATION Dated April 14, 2005

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

**13.8** The Confirmation Order shall approve the settlement with Perkins Coie LLP.

**Signed this 14th day of April, 2005.**

**ONENAME CORPORATION.**


By: /s/ Lon Wiese
      Lon Wiese
      Executive Vice President
      Chief Financial Officer

3442508.1

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930